NATIONAL LABOR RELATIONS BOARD
v. LANE COTTON MILLS CO.

No. 9071.

Circuit Court of Appeals, Fifth Circuit.

May 9, 1940.

Rehearing Denied July 24, 1940.

Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, National Labor Relations Board, and H. G. Ingraham, Atty., National Labor Relations Board, all of Washington, D. C., and Warren Woods, Regional Atty., National Labor Relations Board, of Atlanta, Ga., for petitioner.

Charles Rosen, Alfred C. Kammer, Henry P. Dart, Jr., and Benjamin W. Dart, all of New Orleans, La., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The National Labor Relations Board has petitioned this court for enforcement of an order issued by it against Lane Cotton Mills Company pursuant to Section 10(c) of the National Labor Relations Act, 49 Stat. 449, U.S.C.Supp.III, Title 29, Sec. 151 et seq., 29 U.S.C.A. § 151 et seq. The respondent, Lane Cotton Mills Company, is a Louisiana corporation having its principal place of business in New Orleans where it is engaged in the manufacture and sale of cotton cloth, cotton denim, twine, and rope. Jurisdiction of this court is based upon Section 10(e) of the Act.

On November 19, 1938, the Board issued its decision and order in consolidated cases against the Lane Cotton Mills Company. The Board found that respondent was engaging in unfair labor practices contrary to Section 8 (1) (2) (3) (4) and (5) of the Act. The Board ordered Lane to cease and desist from such unfair labor practices and to take the following affirmative action: Refrain from recognizing Lane Cotton Mills Welfare Association as a bargaining representative of its employees; offer reinstatement to fifty employees found to have been discharged in violation of the Act; make whole these fifty employees for any loss of pay suffered by reason of such illegal discharges or lay offs; upon request bargain collectively with the Textile Workers Organizing Committee as the exclusive representative of its employees; and post appropriate notices.

The respondent contends that the findings and conclusions of the Board are based upon suspicion and conjecture and not upon substantial evidence.

The Textile Workers Organizing Committee began to organize at Lane Cotton Mills in May, 1937, and by June claimed to have 1,300 employee members. In July, 1937, at the request of Robert Tisdale, regional representative of the T.W.O.C., a conference was held with Sigmund Odenheimer president of Lane Cotton Mills Company. Among those present at the conference in addition to Tisdale and Odenheimer were New Orleans newspaper men and some twenty-five employees of Lane Mills. At the conference Odenheimer stated his attitude toward the C.I.O. and T.W.O.C. He said that he felt that the C.I.O. was un-American and dominated by communists and that he did not think that Lane Cotton Mills' employees should have an outside organization but that they should have an independent organization. He stated, however, that he would deal with the T.W.O.C. if he were convinced that it represented a majority of its employees. Odenheimer's statements were carried in the public press, and the day following the conference hundreds of anti-T.W.O.C. circulars were distributed by employees, including employees who served in a supervisory capacity. These circulars in substance contained the objections voiced by Odenheimer at the conference and urged

employees not to attend meetings of the T.W.O.C. There is also testimony in the record that various supervisory employees went about the plant questioning employees about union affiliation, and making threats and statements as to what would happen if the T.W.O.C. should win the election which had been ordered by the Board. One employee was told by a night overseer that Odenheimer would shut down the mill if the C.I.O. won the fight.

On September 7, 1937, an election was held pursuant to an order of the Board. Out of 1,500 eligible voters 1,307 cast valid votes and 942 designated the T.W.O.C. as the proper bargaining representative. Thereafter the Board certified the T.W.O.C. as the exclusive bargaining representative of Lane's employees. The month following the election second hands and other employees distributed printed cards which read:

"We, the employees of Lane Cotton Mills,
        Demand another election.
We Don't want T.W.O.C.
Name ————————."

Many of these cards were circulated and signatures solicited during working hours and there is testimony that in some instances employees were threatened with loss of their jobs if they refused to sign the cards.

Following the election a committee from the T.W.O.C. met with Lane's president, Odenheimer, and presented a proposed contract providing for recognition of the T.W.O.C. and containing provisions relating to hours of work and rates of pay. Odenheimer took the proposed contract and told the committee to return the next day. When the committee returned to Odenheimer's office the following day they were handed a written statement. Lane Mills refused to recognize the committee or the T.W.O.C. and rejected the proposed agreement as being unacceptable. Lane further claimed that there had been intimidation of employees at the election held September 7th. It appears, however, that no contest of the election was filed with the Board, and that William C. Ryckman, general superintendent, and Leo G. Lob, buyer and personnel supervisor, observers for Lane Cotton Mills Company, signed the election certificate and certified that the election had been conducted in their presence "in fairness and with due regard for all parties concerned." The record sup-

ports the finding that the election was fairly conducted and that T.W.O.C. was the duly elected bargaining representative of the Lane employees. Cf. American Federation of Labor, et al. v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. ——, decided January 2, 1940; National Labor Relations Board v. Whittier Mills Company, et al., 5 Cir., 111 F.2d 474, decided May 2, 1940. The respondent's flat refusal to bargain with the T.W.O.C. or its committee supports the finding that Lane had interfered with its employees in the exercise of the rights guaranteed by Section 7 by refusing to bargain collectively within the meaning of Section 8(5).

It further appears from the record that Lane Cotton Mills Welfare Association, which now claims over 1,000 members, was organized in response to Odenheimer's statement that he preferred not to have an outside organization. The Association held its meetings in the Lane Mills' recreation room during working hours, and the leader in organizing activities was Ferdinand Francoeur, a supervisory employee on the night shift. Francoeur testified that the main purpose of the Association was to get rid of the T.W.O.C. The Association had anti-T.W.O.C. cards and circulars printed and the respondent's recreation room was made headquarters for their distribution. It is clear that the Association received aid and encouragement from the management and supervisory officials of Lane Cotton Mills Company.

While employees are free to form their own independent organization, the National Labor Relations Act requires that employees shall be completely independent of the employer "so that in the bargaining, labor will be represented by persons or organizations having only its interest in mind, and acting wholly uninfluenced by fear or favor, of or from the management." When it appears that the management has "had a hand in organizing, supporting or in any wise interfering or collaborating with an 'association' of employees, such an association may not be recognized as the free and voluntary association of employees called for in the act." National Labor Relations Board v. Brown Paper Mill Co., 5 Cir., 108 F.2d 867, 871; National Labor Relations Board v. Good Coal Co., 6 Cir., 110 F.2d 501, decided March 8, 1940. The finding that

the respondent dominated, interfered with, and contributed support to the Association is supported by substantial evidence in the record. National Labor Relations Board v. Fansteel Corp., 306 U.S. 240, 262, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599; National Labor Relations Board v. Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 60 S.Ct. 203, 84 L.Ed. —.

The Board found that fifty employees had been laid off or discharged by Lane in order to discourage membership in the T. W.O.C., all in violation of Section 8(1) and (3) of the Act. It also found that three of these employees had been discharged for the further reason that they had given testimony at a hearing before the Board. The lay offs and discharges began the week following the first hearing before the Board on July 20, 1937, and continued through late September, 1937. Those discharged or laid off included doffers, and employees of the spinning room, weaving department, spooling room, warp room, and lapper room. The salaries of these employees were found to range from $5 to $13 per week.

All employers have wide latitude in employing and discharging employees. The only requirement of the Act is that an employee must not be discharged on account of union activities and union affiliations. The Act designates that it shall be an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment * * * to encourage or discourage membership in any labor organization." Section 8(3); National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Associated Press v. National Labor Relations Board, 301 U.S. 103, 132, 57 S.Ct. 650, 81 L.Ed. 953.

The respondent contends that several of the employees were discharged for cause and that others were laid off because of necessary curtailment of operations in the various departments of the mill. The Board contends that the discharges and lay offs were discriminatory and aimed at destroying the T.W.O.C. The evidence touching the discharges and lay offs is in sharp dispute and permits conflicting inferences to be drawn. We may not, however, substitute our judgment on the disputed facts for the judgment of the Board for, "Whether the court would reach the

same conclusion as the Board from the conflicting evidence is immaterial." National Labor Relations Board v. Waterman Steamship Corporation, 60 S.Ct. 493, 504, 84 L.Ed. —; Mexia Textile Mills v. National Labor Relations Board, 5 Cir., 110 F.2d 565, decided March 1, 1940.

The findings of the Board are supported by the evidence and the order is appropriate to the findings. The petition to enforce is granted. An appropriate decree may be drawn and presented for entry.