### SHELL OIL CO., Inc., v. NATIONAL LABOR RELATIONS BOARD.

No. 10051.

Circuit Court of Appeals, Fifth Circuit.

May 27, 1942.

Vernon Coe, of Houston, Tex., for petitioner.

Robert B. Watts, Gen. Counsel, N.L.R.B., and Ernest A. Gross, Associate Gen. Counsel, N.L.R.B., both of Washington, D. C., and Robert H. Kleeb, Regional Atty., N.L.R.B., of Philadelphia, Pa., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board predicated upon findings that petitioner had interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed to them, and had discriminatorily discharged W. O. Ventura because of his union activities, thereby violating Sec. 8(1) and (3) of the National Labor Relations Act.[1] The Board insists that the order is supported by findings based upon substantial evidence, and asks that it be enforced.

The evidence as to petitioner's interference, restraint, and coercion may be briefly stated. The record contains undisputed testimony showing that the company conducted a private election among its supervisory employees to ascertain their wishes upon the question of whether they should be included among the employees covered by the union contract. The election was announced by a notice from the company couched in language from which it might be inferred that the company wanted the supervisory employees to remain outside the union, and the balloting took place on company property.

The company also maintained records, called man-study sheets, for purposes of adjudging the competence and dependability

[1] 49 Stat. 452, 29 U.S.C.A. § 158 (1) and (3).

of the employees. Many of these sheets contained notations with reference to the attitude of the employee toward the union, and every one of the employees who was classed as an active union member was also classed as disloyal to and uncooperative with the company. Many of the employees knew that the company occasionally referred to the man-study sheets, when confronted with personnel problems, and were aware that active union participation gave them an unfavorable rating.

The Board also found, upon conflicting evidence, that various supervisory employees of high rank had made disparaging remarks about the union and the value of membership in it, had advised new employees that they were not required to join the union, and had indicated to certain of the employees that their continuous filing of grievances might result in their discharge. It cannot be doubted that the company's practice with reference to the man-study sheets, and the conduct of its supervisory employees who had power to hire and discharge, had an intimidating and coercive effect upon the employees resulting in interference with their rights to unite for purposes of collective bargaining.[2] The same inference reasonably might have been drawn from the circumstances surrounding the election sponsored by the company.[3] Violations of Sec. 8(1) of the Act were clearly established, and the order in regard thereto will be enforced.

These are the facts relating to the discharge of Ventura: During the lunch hour on January 10, 1940, on the premises of the company, Ventura violated two rules of the company by using abusive language toward a fellow employee and by threatening the employee with violence. The company learned of the occurrence, took statements from several witnesses and from the threatened employee, ascertained to its satisfaction that Ventura had violated the rules, and notified him that he was discharged. There is some evidence indicating that the company took statements only from those witnesses whose version of the incident placed Ventura in an unfavorable light, and that Ventura was given no opportunity to defend himself until after the company had reached its decision to discharge him.

Shortly before these occurrences, another employee had committed the same two offences. He was a non-union man, and no disciplinary action at all was taken in his case. A third employee had used abusive language, and, in addition, had been insubordinate to a supervisory employee. He was laid off for two weeks. Ventura was a steward in the union, and had discussed grievances of the employees with the management. He was discharged. It thus appears that Ventura was discriminated against in that he received different treatment from that meted out to other similar offenders, and the reason behind the discrimination is our only remaining inquiry.

The Board found that Ventura's conduct was seized upon as a pretext to cloak the real reason for his discharge, namely, his union activities. We think the partial manner in which the investigation was conducted, and the inequality of the treatment received by the Union and the non-union employees, respectively, considered in the light of the company's antipathy toward the union, justify the inference drawn by the Board, and support the order that he be reinstated with back pay.[4]

The petition accordingly will be denied, and the order of the Board will be enforced.

---

[2] N. L. R. B. v. Brown Paper Mill Co., 5 Cir., 108 F.2d 867; N. L. R. B. v. Lane Cotton Mills, 5 Cir., 111 F.2d 814; N. L. R. B. v. West Texas Utilities Co., 5 Cir., 119 F.2d 683.

[3] International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L. Ed. 368; N. L. R. B. v. Automotive Maintenance Machinery Co., 62 S.Ct. 608, 86 L.Ed. ——, reversing 7 Cir., 116 F.2d 350; N. L. R. B. v. American Mfg. Co., 2 Cir., 106 F.2d 61.

[4] N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; New York Handkerchief Mfg. Co. v. N. L. R. B., 7 Cir., 114 F.2d 144; N. L. R. B. v. Air Associates, Inc., 2 Cir., 121 F.2d 586.