## AMERICAN SMELTING & REFINING CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 10139.

Circuit Court of Appeals, Fifth Circuit.

May 27, 1942.

Rehearing Denied June 30, 1942.

James M. Goggin, of El Paso, Tex., and R. Worth Vaughan, of New York City, for petitioner.

Robert B. Watts, Gen. Counsel, N.L.R.B., Ernest A. Gross, Associate Gen. Counsel, N.L.R.B., and Archibald Cox, Atty., Dept. of Justice, all of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition for review of an order of the National Labor Relations Board based upon findings that the petitioner was guilty of unfair labor practices in violation of Sec. 8(1) and (3) of the National Labor Relations Act.[1] Petitioner contends that the findings of fact relied upon by the Board are wholly without support in the evidence; and the Board asserts that its order is lawful and proper, and asks enforcement of it.

Petitioner operates a smelter and refinery at El Paso, Texas. Prior to July, 1940, a majority of the production and maintenance workers in the plant belonged to a local union affiliated with the A. F. of L., which union, as bargaining representative of the employees, had executed a contract with the company. Some of the employees became dissatisfied with the union in 1939, and an employee named Humberto Silex began a campaign to organize the employees into a union affiliated with the C. I. O. In July, 1940, the latter group, in a letter signed by Silex, requested recognition from the employer as the appropriate bargaining unit, which request was denied on the ground that the company already had recognized the A. F. of L. affiliate.

The request of the C. I. O. for recognition stimulated the A. F. of L. to vigorous campaigning to revive its waning popularity, and we think the record supports the finding that the company contributed material aid to the undertaking. Dues and initiation fees were collected on company time; during working hours A. F. of L. leaflets were distributed, memberships were tacitly solicited, and the C. I. O. was openly disparaged, by supervisory employees whose conduct was not reprimanded by the company. C. I. O. adherents were warned by foremen that, if their union rose to power, the plant would be shut down; and one employee received a promotion for services rendered in behalf of the A. F. of L. effort. Such activities, whether they are openly sponsored by the company or are quietly endorsed by a convient unawareness, necessarily have the effect of bestowing an advantage upon one union over its competitor, and interfere with and coerce the employees in the exercise of the rights guaranteed to them by the Act.[2]

The Board also found that Silex, Secretary and most active advocate of the

[1] 49 Stat. 452, 29 U.S.C.A. § 158(1, 3).

[2] N. L. R. B. v. Link-Belt Co., 311 U. S. 584, 61 S.Ct. 358, 85 L.Ed. 368; N. L. R. B. v. Electric Vacuum Cleaner Co,. 314 U.S. 600, 62 S.Ct. 846, 86 L.Ed. ——; N. L. R. B. v. Texas Mining & Smelting Co., 5 Cir., 117 F.2d 86.

C. I. O. Union, was discharged because of his union activities. If this finding is well founded, and we think it is, it lends additional support to the finding as to interference and coercion, and makes proper the enforcement of the order in its entirety.

Silex was the operator of a machine used to separate and crush ore. It was his duty to watch the machinery and to report to his immediate superior any flaw in its operation. It was the duty of the latter to watch the machinery and to observe Silex's work; and a third person was required to oil the machinery every two hours. About four o'clock one morning Silex noticed that the machinery was smoking. He promptly notified his superior, who stopped the machinery and caused it to be examined by an electrician. It was then discovered that the machinery had been in operation for several hours without oil, and, by reason thereof, had been overheated and severely damaged.

Negligence was attributed to Silex on the ground that the machinery theoretically must have given off an odor and been smoking for several hours in order to have been burned so severely; that this condition should therefore have been noticed by Silex and reported to the superior much earlier than it was. Silex, however, testified that he performed his duties with customary diligence the entire night, and that he notified his superior upon the earliest indication that all was not well. The superior testified that he looked in upon Silex and the machinery at short intervals throughout the night, and always found Silex at work. The foreman under whom the oiler, a non-union man, worked testified that he considered the oiler wholly responsible for the damage to the machinery. Silex was discharged, the oiler was suspended for five days and later discharged, and the superior was not disciplined.

The Board found that Silex performed his duties correctly, and that the company had no reasonable ground to believe otherwise; that the investigation of the difficulty was superficial and inadequate; and that the treatment Silex received marked a departure from the company's disciplinary policy, and was discriminatory as between the employees involved. These findings express the substance of the testimony of the witnesses that the Board chose to believe, and this court is powerless to review its determination upon questions of credibility. Taking these findings as established facts, it was reasonable for the Board to infer that the union activities engaged in by Silex, being contrary to the wishes of the company, constituted the real reason for his discharge.[3]

We conclude that the findings are supported by substantial evidence, and the request for enforcement of the order based thereon accordingly will be granted.

[3] N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; New York Handkerchief Mfg. Co. v. N. L. R. B., 7 Cir., 114 F.2d 144; Shell Oil Co. v. N. L. R. B., 5 Cir., May, 1942, 128 F.2d 206.