## NATIONAL LABOR RELATIONS BOARD v. BROWN PAPER MILL CO., Inc.

### No. 10252.

Circuit Court of Appeals, Fifth Circuit.

Feb. 23, 1943.

Rehearing Denied April 2, 1943.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, and Maurice J. Nicoson, Principal Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

L. J. Benckenstein, of Beaumont, Tex., and Clyde R. Brown, of Monroe, La., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The International Brotherhood of Paper Makers, affiliated with the American Federation of Labor, filed with the National Labor Relations Board charges and amended charges of unfair labor practices on the part of Brown Paper Mill Company, Inc. The Board issued its complaint, and after due notice, a hearing was held before a trial examiner and much evidence was taken. The trial examiner rendered his report, exceptions were filed, a full and exhaustive hearing was had before the Board, and on March 25, 1941, pursuant to § 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., the Board issued its findings of fact, conclusions of law, and order. The Board found that the Company, by coercive statements and conduct of its supervisory employees, had in violation of Section 8(1) of the Act interfered with, restrained, and coerced its employees in and about the organization of a union; and that it had further discriminated in violation of Section 8(3) and (1) against nine of its employees and had laid off and discharged them because of their union membership and activities; and as to four of these nine employees the Board found that the Company had, in violation of Section 8(4), discriminated against them for testifying against the Company in a previous unfair labor practice proceeding. The Board ordered the Company to cease and desist from the unfair labor practices; to offer reinstatement with back pay to the nine employees discriminated against; and to post appropriate notices. The Company refused to comply, and pursuant to Section 10(e) the Board filed this petition for enforcement of its order.

The respondent operates a plant near Monroe, Louisiana, where it manufactures, sells, and distributes paper and paper products. Its activities fall within the coverage of the National Labor Relations Act, and it has previously been the subject of unfair labor practice proceedings in which this Court upheld the findings of the Board and enforced its order in full. National Labor Relations Board v. Brown Paper Mill Co., Inc., 5 Cir., 108 F.2d 867, certiorari denied 310 U.S. 651, 60 S.Ct. 1104, 84 L.Ed. 1416.

■ The evidence discloses that in the early part of 1938 employees of the respondent were attempting to organize a union; that certain employees who were active in organizational activities were either laid off or discharged at the height of each union campaign; that after such discharges union activity would subside, but on different occasions employees would renew their efforts to organize and would hold meetings to create interest in and further such organization; and that respondent's supervisory employees engaged in anti-union agitation, and by threats and offers of promotion obstructed organization of a union. After the employees had effected a union organization, supervisory employees questioned members concerning their union affiliation and openly advocated renunciation of the union. Such conduct on the part of officers and officials has repeatedly been held to be violative of Section 8(1) of the Act. National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed 309. Respondent is answerable for the activities of its officers and supervisory employees where, as here, it is shown that they have been guilty of interfering with the rights of employees to organize and belong to a union, and have sought to coerce, restrain, and influence them in and about their union activities—rights guaranteed to employees by Section 7 of the Act. There was substantial evidence before the Board to warrant the finding that the conduct of the supervisory employees represented and reflected respondent's hostile attitude toward union organization and union activities of its employees, and that this hostile attitude was forcefully brought to the attention of the employees. Cf. International Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed 50; Solvay Process Company v. National Labor Relations Board, 5 Cir., 117 F.2d 83.

■ The respondent contends that the Board's finding of discriminatory discharge of nine employees is not supported by the evidence, and that the record shows that these employees were discharged for cause: Dangerfield and Beal for economic reasons; Swindall for negligence, incompetence, and wilful misconduct in the performance of his duties by improperly cutting two sets of five rolls of paper; Peavy for sleeping on the job; Boyd, Horrell, and McPhink because their jobs came to an end upon installation of a new system; Rhodes because of discontinuance of the work in which he was engaged; and Ashley because of insubordination. We think the record evidence

supports the finding that the respondent has discriminated as to the hire and tenure of employment of these employees in violation of the Act. As to six of the employees it clearly appears that the Company seized upon the alleged causes as an excuse to discharge them because of union activities. We find comment necessary only as to the evidence touching the discharge of three of the named employees: The evidence shows that Wilbert Ashley was advised by his direct foreman that the work was short and that each employee working in his department would be required to take a reduction in the number of days they could work each week. Ashley worked the greater part of one week, and when he appeared for work the following week, he was advised that he would have to lay off. He became angry and repied, "This is a hell of a way to work men. I know it ain't you. It's the damned old man." Thereupon the foreman ordered him to check out. The examiner, who had opportunity to see and hear each witness and to weigh the evidence, reported to the Board that he found that Ashley had been discharged for cause, but the Board refused to follow the finding of the examiner. Joe Peavy was found asleep on the job according to the evidence of his foreman. Peavy denied that he was asleep, although he was found sitting down with his head in his hands. James Rhodes was not attentive to his work, and there is further evidence that he drank to excess and did not know how to operate the new machines which were being installed, but there was also evidence that he was a good worker, and that he was active in the union.

If this were a case of first impression and we were permitted to weigh the evidence, resolve its conflicts, and draw our own inferences from it, we would be constrained to hold that these three employees, Ashley, Peavy, and Rhodes, were discharged for cause. However, fact finding is not our function in such cases, and the facts found by the Board may not be overturned unless there was no substantial evidence to bulwark their findings. On this record we cannot say that these employees were not discriminated against for exercising rights guaranteed to them by the Act.

The evidence supports the findings of the Board. The petition is granted, and the order of the Board will be enforced in full. Appropriate decree may be prepared and presented for entry.