## NATIONAL LABOR RELATIONS BOARD v. PEYTON PACKING CO., Inc.

### No. 10960.

#### Circuit Court of Appeals, Fifth Circuit.

June 21, 1944.

Alvin J. Rockwell, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Joseph B. Robison, Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

Eugene T. Edwards, of El Paso, Tex., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition by the National Labor Relations Board for enforcement of its order entered pursuant to its findings that the Peyton Packing Company had violated Section 8 (1) and (3) of the National Labor Relations Act [1] by acts and statements calculated to discourage union activity by the discriminatory promulgation and enforcement of a rule regulating the conduct of employees, and by discharging nine employees because of their union affiliation and activities. Enforcement is resisted upon the one ground that these findings are wholly unsupported by any substantial evidence.

The essential primary facts are free of serious dispute. The controversy centers upon the propriety of the inferences drawn from those facts by the Board, particularly in connection with the considerations which motivated the discharge of nine employees.

Respondent operated a meat-packing house in El Paso, Texas. In 1937, a labor organization called "Association of Peyton Packing Employees" was formed, in which Joseph Grandara, respondent's personnel manager, and Raul Aguilar, a billing clerk in the main office, played important roles. In previous proceedings, the Board determined that the union was supported and dominated by the company, and that the company entertained a hostile attitude toward an attempt to organize the employees for affiliation with a national union. 32 N.L.R.B. 595. Pursuant to the Board's order, the company union was dissolved in 1941.

Almost immediately thereafter, an organizer of the Amalgamated Meat Cutters and Butcher Workmen of North America, an A. F. of L. affiliate, began an organizational campaign among the employees. These activities soon became known to the Company. Grandara and Aguilar thereupon began to contact various employees who joined the new union, to whom meaningful remarks were made disparaging the A. F. of L. and its practices. The men also were told that Grandara had means of learning what took place at the meetings of the unions, and the accuracy of his information gave credence to the statement. Later, three plant foremen joined in the effort to dissuade the employees from becoming union members, threatening that all union members would be discharged one by one.

On January 26, 1942, the Company promulgated a new rule, which was posted

---

[1] 29 U.S.C.A. §§ 158(1) and (3).

throughout the plant, forbidding the employees to "engage in solicitation of any kind" on company time or property, under penalty of discharge. During the month of May, 1942, the union organizer repeatedly requested that Mr. Peyton, Chairman of the Company's Board of Directors, set a date for a conference with the union representatives for collective bargaining. Before any reply was given to these requests, the vice-president of the company directed Grandara and Aguilar to conduct an investigation to discover violations of the rule against solicitation. Acting under this authority, Grandara and Aguilar interviewed employees throughout the plant, asking whether the employees had been solicited to join the union, if so when and by whom they had been so solicited, and whether or not the employee had become a member. It does not appear that the investigators inquired concerning solicitation to any organization other than the A. F. of L. union..

This manner of inquiring into suspected breaches of the rule against solicitation was an unprecedented departure from respondent's customary procedure in enforcing its rules of conduct. As a result of the investigation, nine employees who were union members were discharged, three on May 15, four on May 18, one on May 21, and one on May 26, 1942. On May 21, 1942,

Mr. Peyton formally replied to the organizer's request for a conference, stating that no useful purpose. would be served by any such conference, since the union organizer, so far as the Company knew, did not represent anyone having legitimate business with the company.

The respective supervisory employees who openly denounced the union, threatened retaliatory tactics on the part of the management, and spied upon the union's affairs, were persons having authority with respect to the employment, promotion, and working conditions of employees. The rule against solicitation, though reasonable and in lawful form, was administered not according to its tenor but in an arbitrary and discriminatory manner. Such conduct on the part of an antagonistic management and its representatives, adroitly timed to cripple the strength of the union during its formative period, clearly warranted the findings of the Board that the right of the employees to organize for collective bargaining was interfered with, and that the discharges were discriminatory in that they resulted from union membership and activity.[2]

The Board's findings are supported by substantial evidence, and the order entered is in all respects proper. The petition for enforcement is accordingly granted.

[2] National Labor Relations Board v. Bradford Dyeing Asso., 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; International Association of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; American Smelting & Refining Co. v. N. L. R. B., 5 Cir., 128 F.2d 345; National Labor Relations Board v. Brown Paper Mill Co., 5 Cir., 133 F.2d 988.