## NATIONAL LABOR RELATIONS BOARD v. AMERICAN FURNACE CO.
### No. 9074.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1946.

---

Gerhard P. Van Arkel, Gen. Counsel, Morris P. Glushien, Associate Gen. Counsel, Dominick L. Manoli, and Leslie J. Capek, Attys., N. L. R. B., A. Norman Somers, Asst. Gen. Counsel, N. L. R. B., all of Washington, D. C., and Herman J. De Koven, N. L. R. B., of Chicago, Ill., for petitioner.

T. Jackson Case, Clarence T. Case and D. W. Voyles, all of St. Louis, Mo. (Case, Voyles & Case, of St. Louis, Mo., of counsel), for respondent.

Before KERNER, and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The National Labor Relations Board, as the petitioner, seeks the enforcement of its order directing the respondent to cease and desist from interfering with, restraining, or coercing its employees in the exercise of the right of self-organization, from interfering with and dominating the American Furnace Labor Organization or any other labor organization of its employees, and from recognizing the American Furnace Labor Organization as bargaining representative for its employees, all of which practices the Board found were in violation of Sections 8(1) and (2) of the National Labor Relations Act[1], and to take certain affirmative action to effectuate the policies of the Act.

The only questions presented are whether the Board's order is sustained by substantial evidence, and whether the order is valid.

In February 1942 the respondent opened a plant in Red Bud, Illinois, to engage in war work. The businessmen of Red Bud provided the respondent with a factory building by popular subscription, the title to which building later passed to the respondent. The town issued bonds for the enlargement of its municipally-owned plant to provide utility services to the respondent's plant. The businessmen's committee was very much opposed to unionization of the respondent's plant because of a fear of labor trouble that might cause the plant to be closed or moved. Labor for the plant was recruited from the town of Red Bud and the surrounding rural community. The businessmen were active in recruiting labor, although they had no legal interest in the plant or its operation nor had they any

---

[1] 49 Stat. 449, 29 U.S.C.A. § 158(1, 2).

authorization to represent the respondent in any manner whatsoever.

It is unnecessary to recite at length the facts in this cause. The Board made several findings that are not supported by any substantial evidence, but there is substantial evidence to support some of the Board's findings that the respondent had violated Sections 8(1) and 8(2) of the Act. It was admitted by the respondent on argument that if the committees hereafter referred to were labor organizations within the meaning of the Act, the respondent had dominated and financially supported such organizations.

There were three of these committees, and for the sake of convenience all of them had used the name American Furnace Company Labor Organization or American Furnace Labor Organization. The First Committee was selected by the employees themselves by ballot vote. This committee, consisting of one foreman and two non-supervisory employees, was elected for the purpose of presenting a petition to the respondent for an increase in wages. The petition was presented, the increase was granted and approved by the War Labor Board, and the committee went out of existence.

The members of the Second and Third committees were appointed by the superintendent of the respondent. The Second Committee, consisting of three employees, was appointed for the purpose of having it present to the respondent and then follow through to the War Labor Board a petition which the employees themselves had drawn up for an increase in wages for a limited group in the plant.

The Third Committee, composed of nine foremen and four non-supervisory employees, was appointed for the purpose of continued consideration with the management of plans to improve working conditions. This committee represented the employees in obtaining the approval of both the respondent and the War Labor Board of a plan for vacations with pay. At the time of the hearing, this committee was still in existence and had under consideration a profit-sharing plan.

There was no formal organization or continuity of organization from one committee to another. The committees had no constitutions or bylaws, and, with the exception of the First Committee which had been elected by ballot vote of the employees, had no membership aside from that selected by Superintendent Koch. The committees had no revenues for any purpose, and any expenses incurred were paid by the respondent. All meetings were held on the company's time and on the company's premises.

The definition of a labor organization is found in Section 2(5) of the National Labor Relations Act, 29 U.S.C.A. § 152(5). This section is worded in very broad and general terms and defines a labor organization as follows: "* * * any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

From this statutory definition it is plain that at least two of these committees existed for the purpose of representing employees and participating in their behalf with the management of the respondent in whole or in part in matters concerning wages, conditions of work, and grievances. Such loosely-formed committees, in our opinion, constitute labor organizations within the meaning of the Act, and the admitted establishment, domination, and support thereof by the respondent constitute a violation of Section 8(2) of the Act. National Labor Relations Board v. National Licorice Co., 2 Cir., 104 F.2d 655; Id., 309 U.S. 350, 359, 360, 60 S.Ct. 569, 84 L.Ed. 799; National Labor Relations Board v. Jas. H. Matthews & Co., 3 Cir., 156 F.2d 706.

As to the violation of Section 8(1), it has been held that the unfair labor practice engaged in by an employer in violation of Section 8(2), which we have just held the respondent to be guilty of, is in itself evidence of interference, restraint, and coercion of the employees in their right to self-organization, in violation of Section 8(1). National Labor Relations Board v.

Express Publishing Co., 312 U.S. 426, 433, 435, 61 S.Ct. 693, 85 L.Ed. 930; National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 118 F.2d 874, 890; Art Metals Const. Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148, 150.

However, the record goes further in this cause. The businessmen of Red Bud, as we have pointed out, were very much opposed to unionization of the respondent's plant. They held a meeting and authorized the mayor of the town to appear before the respondent's employees and speak to them. This the mayor did after he had obtained the consent of Mr. Franke, president of the respondent, and Mr. Koch, superintendent of the plant. The latter instructed the janitor at the plant to stand by the time clock and inform the employees of the day shift as they left work and those of the night shift as they came to work that the mayor would address them. The mayor accordingly made the speech on the company's property during working hours. In the course of this speech the mayor stated that the business people of Red Bud were responsible for having the plant there; that they had invested a large amount of money in the enterprise; that the respondent had met all of its obligations to the businessmen; and that the respondent could and probably would move out if the union came in. The mayor further said that he did not see why the employees should bring some one in there to organize them because the respondent's president would not recognize any union of the American Federation of Labor or the Congress of Industrial Organizations but that he would recognize a shop union; that he, the mayor, had had a meeting with Mr. Franke and that if the employees had any differences, they should appoint a committee to talk to Mr. Franke and he, the mayor, would act as a "go between."

■ The respondent's president disclaims any knowledge of what the mayor intended to speak about or what he did speak about, and it is contended by the respondent that it did not know what the mayor intended to say or what he did say. From the well-known attitude of the businessmen and from the fact that the mayor's speech was made only a few weeks before an election was to be held to determine whether the employees would designate an affiliate of the A. F. of L. as their bargaining representative, we think it is a fair inference that the respondent's president knew or ought to have known that the mayor intended to speak to the employees against unionization. Furthermore, there is evidence in the record that Superintendent Koch was present at least part of the time the mayor was speaking. Mr. Franke, the respondent's president, did not repudiate the mayor's speech to his employees nor even deny references made to him by the mayor in the speech as to Mr. Franke's attitude toward an outside union and his approval of a shop union. We think the respondent cannot escape responsibility for the mayor's speech when it knew or ought to have known that said speech would be anti-union, and when the speech was not only anti-union but threatening and intimidating in its tenor and purported to quote the attitude of the respondent's president toward unionization, which was never denied by respondent's president. The respondent's acquiescence in and apparent approval of the speech in itself constituted interference with the employees' right to self-organization, in violation of Section 8(1) of the Act. R. R. Donnelley & Sons Co. v. National Labor Relations Board, 7 Cir., 156 F.2d 416; Reliance Mfg. Co. v. National Labor Relations Board, 7 Cir., 125 F.2d 311, 317.

■ As further evidence of the respondent's interference with the right of its employees to self-organization, we direct attention to that part of the record which shows that the businessmen of Red Bud were accorded the right to distribute anti-union literature to the respondent's employees upon the respondent's property, and that an employee of the respondent was denied the same right to distribute literature of the union at relatively the same spot and time. This was a discriminatory act that interfered with the employees' right of self-organization. National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; National Labor Relations Board v. William Davies Co., Inc., 7 Cir., 135 F.2d

179, 181; National Labor Relations Board v. W. A. Jones Foundry & Machine Co., 7 Cir., 123 F.2d 552, 554.

■ Aside from discrimination, an employer may not prohibit employees from distributing union literature upon his premises during non-working hours except under exceptional circumstances which are not shown in this case. Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, 157 A.L.R. 1081; National Labor Relations Board v. Illinois Tool Works, 7 Cir., 153 F.2d 811, 813, 814.

This evidence, in our opinion, is ample to sustain the Board's findings, and the findings are sufficient to support the order. The order is the usual one, is not improper, and therefore will be enforced.