## NATIONAL LABOR RELATIONS BOARD v. CONTINENTAL PIPE LINE CO.

### No. 11834.

Circuit Court of Appeals, Fifth Circuit.
April 30, 1947.

Elmer Davis, Regional Atty., N.L.R.Bd., of Fort Worth, Tex., Gerhard P. Van Arkel, Gen. Counsel, N.L.R.Bd., and A. Norman Somers, Asst. Gen. Counsel, N.L. R.Bd., both of Washington, D. C., for petitioner.

William H. Zwick, of Oklahoma City, Okl., and Chas. A. Perlitz, Jr., of Houston, Tex., for respondent.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

The petition is for enforcement of an order of the National Labor Relations Board requiring the respondent pipe line company (1) to cease and desist from engaging in unfair labor practices by coercing employees and discouraging union activity; (2) to offer reinstatement to and make whole two employees found to have been discriminatorily discharged; and (3) to post appropriate notices.

Respondent is engaged in interstate commerce and there is no issue regarding the applicability of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., to its operations. Respondent's resistance to enforcement of the order is on the ground that the findings and order of the Board are not supported by substantial evidence.

As to unfair labor practices of the respondent in discouraging union activity and membership, there is evidence that Continental Pipe Line Company's District Superintendent, H. E. Greenwell, was openly hostile to union organization and activity from the very beginning of union organizational efforts in 1944. When union activity first blossomed in Greenwell's district, he expressed his opposition to the union and made the threat that those who joined the union would either be "run off or sent to Wyoming." Greenwell attended the first organizational meeting and refused to leave when the union organizer suggested that his presence would tend to keep his men from acting freely. Greenwell not only remained at the meeting; he made a speech and told the men to "let their conscience be their guide," but that if a union was formed he would resign.

At this organizational meeting of the union, only one employee, James M. Pumpelly, joined. Pumpelly had been continuously employed by respondent for-

over twenty years and had never been absent from work and had never been disciplined. After Pumpelly joined the union, however, his trouble with Greenwell began. Greenwell found fault with Pumpelly's "attitude" and not with his work. On August 31, 1944, the matter came to a head when Greenwell charged Pumpelly with falsifying a claim for overtime pay. Pumpelly denied the charge. Pumpelly testified: "Then I said, 'Greenwell, it looks like this is the end of it don't it?' And he said, 'What else can I do to get rid of you?—You're fired.' I said, 'You're not firing me; I'm quitting,' and then he says, 'No; you're fired.'" Greenwell contended that Pumpelly voluntarily quit his job. The evidence was conflicting, and the Board, as trier of the facts, resolved the conflict in favor of Pumpelly and found that he had been discharged by Greenwell.

■ Ralph King, a gauger, was discharged on April 19, 1945, by Greenwell. Respondent contends that King was discharged solely because he failed to gauge oil tanks according to company rules and that his union membership had nothing to do with the termination of his employment. King had been an employee with a good work record for seven years. Prior to joining the union and becoming its vice-president on March 21, 1945, he had been in line for promotion to district gauger. He was not promoted, and on April 19, 1945, Greenwell went out to King's battery of tanks and concealed himself in some bushes to watch King gauge the tanks. King did not make the required tests and Greenwell discharged him immediately. At the hearing the evidence disclosed that other gaugers under Greenwell did not properly gauge their tanks at times, but Greenwell did not check up on them as he did on King.[1] The evidence as to King's discharge permits of two conflicting inferences: (1) That he was discharged for cause in that he did not gauge the tanks properly; and (2) that he was singled out by Greenwell who was looking for an excuse to fire him because he was displeased at him for joining and becoming an officer in the union. The Board resolved the conflicts in the evidence and found that the cause given by Greenwell for King's discharge was a pretext and that King was in fact discharged because of his union activities.

■ An extended discussion of the evidence would serve no good purpose, for in cases arising under the National Labor Relations Act we are not permitted to weigh the evidence, resolve its conflicts, and draw our own inferences. In such cases as this, fact finding is not our function and the facts found by the Board may not be disregarded unless there is no substantial evidence to support them. N.L.R.B. v. Brown Paper Mill Co., 5 Cir., 133 F.2d 988, 990. It is sufficient to say that upon a careful examination of the record we find that there is substantial evidence in support of the Board's findings that, in violation of Sections 8(1) and 8(3) of the Act, the respondent interfered with, coerced, and restrained its employees in the exercise of rights guaranteed to them by the Act, and that Pumpelly and King were discriminatorily discharged because of their union activity.

There is substantial evidence to support the findings of the Board. The order is proper under the findings, and a decree of enforcement will be entered.

Enforced.

---

[1] On this record it is clear that King, and other gaugers, did not abide by company rules regarding the gauging of tanks. However, it cannot be said that this violation of rules was the real reason for King's discharge on April 19, 1945. If, upon reinstatement, King continues to ignore the company rules, the fact that he is a union member will not provide him immunity from discharge. An employer may always discharge an employee for cause. The Act only prohibits discharges on pretext which are in fact discriminatory because of or to discourage union membership and activity.