**NATIONAL LABOR RELATIONS BOARD**

v.

**F. W. WOOLWORTH CO.**

No. 11882.

United States Court of Appeals,
Sixth Circuit.

June 3, 1954.

McAllister, Circuit Judge, dissented.

A. Norman Somers, Asst. Gen. Counsel N.L.R.B., Washington, D. C. (George J. Bott, David P. Findling, Frederick U. Reel, Milton Eisenberg, Washington, D. C., on the brief), for petitioner.

Christopher W. Hoey, New York City (Richard J. Hickey, Quentin O. Young, Eugene F. Rowan, Davies, Hardy, Schenck & Soons, New York City, on the brief), for respondent.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

The question squarely presented in this petition for enforcement is whether an employer which addresses its employees on the subject of unionization, on its premises and during working time in a lawful and uncoercive manner protected by Section 8(c) of the National Labor Relations Act, 29 U.S.C.A. § 158(c), is required to admit union agents into its premises to address its employees for an equal amount of time during working hours, there being adequate facilities in the immediate area for contact between the union and employees. The Board decided that this was an unfair labor practice. Respondent contends that this ruling ignores and nullifies Section 8(c), the free speech provision of the Act.

The Board found that Section 8(c) was not involved, but that respondent applied its no-solicitation rule in effect on its premises in a discriminatory manner, and interfered with, restrained and coerced its employees. The Board issued the usual cease and desist order.

The facts are not in controversy and are as follows:

The incidents occurred at one of the more than two hundred Woolworth stores. On September 10, 1951, the Retail Clerks International Association (AFL) filed a petition with the Board for certification as bargaining representative of respondent's employees at its store in Springfield, Ohio, and an election was directed for January 19, 1952. This store has some 150 employees. On January 9, 1952, respondent's manager held two meetings on the store property and in working time. At each of these meetings the manager read the employees a speech, which was found by the examiner and the Board not to violate § 8(c) of the Act. On the following day the general organizer of the union, who was not an employee of respondent, requested the

manager to allow union agents to speak to the employees for an equal amount of time on respondent's property and working time. This request was refused orally and in writing. On January 12 the manager again addressed respondent's employees on respondent's time and property and a second request of the union to address the employees for an equal time on respondent's working time and property was refused. The election was held on January 19, 1952, and a majority of the voting employees voted against representation by the union.

The union began its campaign in August, 1951. During the five months before the election, as stated by the union organizer, it contacted respondent's employees "in their homes and other public meeting places, such as drug store soda fountains, hotel lobbies." The union hall of the Springfield Federation of Labor was approximately one and one-half blocks from the store. Eight weekly meetings which Woolworth employees attended and three meetings particularly for the Woolworth employees were held by the union during this period. Respondent's employees left the store premises by one entrance and were easily available for contact there. The Board held that respondent, in refusing the union's request for an opportunity to address the employees on its premises and in working time, discriminatorily applied its no-solicitation rule, which reads as follows:

"We are governed by the Business Protective Board of the Springfield Chamber of Commerce for the year ending December 31, 1952. Solicitations of all things must have the approval of the Board."

Respondent contends that this finding defeats the Congressional intent underlying the enactment of Section 8(c), that it amounts to legislation by an administrative tribunal and denies freedom of speech. It also contends that there was no discrimination in the application of the no-solicitation rule.

Enforcement of the order should be denied. Section 8(c) of the National Labor Relations Act, which is part of the amendment enacted June 23, 1947, reads as follows:

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

This section imposes no limitation upon the expression of the employer's views except that they must not contain a threat of reprisal or force or promise of benefit. It is conceded that the manager's speech contained no threats nor promises and is protected by Section 8 (c). But the Board ruled that a limitation exists to the effect that the employer who expresses such views on his premises must give an equal amount of working time on the premises to the union.

The Board relied on the provision in the Federal Communications Act, 47 U.S.C. § 315(a), that when a candidate for public office is permitted to use a broadcasting station the licensee must give an equal opportunity to all other candidates for the same office. This analogy is not pertinent. Section 8(c) does not provide that an employer who expresses his views on unionization on his premises and within working time must give an equal amount of time to the union to speak to the employees in working time on the employer's premises. Whether the Congress could have included such a provision in view of the First Amendment need not be considered. The Congress enacted the section in unlimited form.

The purpose of the enactment was to guarantee to employers as well as to unions the right of free speech. In view of the legislative history, while Section 8(c) is a restatement of the principle embodied in the First Amendment of the United States Constitution [N. L. R. B. v. Bailey Co., 6 Cir., 180 F.2d 278], its addition to the original National Labor

Relations Board Act is an authoritative direction given by the Congress to the Board to apply the First Amendment in behalf of the employer as well as of the employee. The section was enacted to remedy the situation which arose from the holdings of the Board under the Wagner Act that it was unfair labor practice for an employer to address his employees in opposition to a union, even though his address was entirely uncoercive. As stated in the Senate report on the Senate Bill which embodied the proposed amendment:

"Section 8(c): Another amendment to this section would insure both to employers and labor organizations full freedom to express their views to employees on labor matters, [so long as they] refrain from threats of violence, intimation of economic reprisal, or offers of benefit. The Supreme Court in Thomas v. Collins, (323 U.S. 516 [65 S.Ct. 315, 89 L.Ed. 430]), held, contrary to some earlier decisions of the Labor Board, that the Constitution guarantees freedom of speech on either side in labor controversies and approved the doctrine of the American Tube Bending case [N. L. R. B. v. American Tube Bending Co., 2 Cir., 134 F.2d 993]. The Board has placed a limited construction upon these decisions by holding such speeches by employers to be coercive if the employer was found guilty of some other unfair labor practice, even though severable or unrelated (Monumental Life Insurance, 69 N.L.R.B. 247) or if the speech was made in the plant on working time (Clark Brothers, 70 N.L.R.B. 60). The committee believes these decisions to be too restrictive and, in this section, provides that if, under all the circumstances, there is neither an expressed or implied threat of reprisal, force, or offer of benefit, the Board shall not predicate any finding of unfair labor practice upon the statement. (Senate Report No. 105 on Senate Bill No. 1126, dated April 17, 1947).

Similar statements appear in the various Congressional Reports dealing with this amendment. House Report No. 245 on Representatives Bill No. 3020, dated April 11, 1947; Statement of Managers contained in House Conference Report No. 510 on House of Representatives Bill No. 3020, June 3, 1947.

The summary of Bill and Analysis of Conference Report by Senator Taft, June 5, 1947, 93 Congressional Record 6601, shows that Section 8(c) contemplates primarily oral communication with employees. As Senator Taft said, the language of the report of the House Committee makes it clear that what the sponsors of the House Bill had in mind were primarily oral utterances. The language of the House Bill, "the expressing of any views, argument, or opinion," was retained in the Act.

The section does not limit conference by the employer to individual employees nor to any particular time or place of conference. It plainly contemplates and protects conferences with the employees in a group, that is to say, a meeting of the kind called by the manager for his discussion of unionization. The statute expressly protected the address involved here, but by construing with the section a requirement of an allowance of equal time to be given to union agents the Board nullified the congressional protection. Whether the Board is authorized to enforce such a ruling is the controlling question in this case.

For a short time after the enactment of Section 8(c) the Board ruled that an employer could address its employees on the company's own time and property without violating the purpose of the Act. The Babcock and Wilcox Co., 77 N.L.R.B. 577; S & S Corrugated Paper Machinery Co., Inc., 89 N.L.R.B. 1363, 1364. However, in Bonwit Teller, Inc., 96 N.L.R.B. 608, the Board reverted to its pre-amendment ruling and decided that such an address was an unfair labor practice unless the union was given

an equal amount of working time on the employer's premises. It overruled the S & S Corrugated Paper Machinery case, and in the Bonwit Teller case relied upon Clark Brothers, 70 N.L.R.B. 60, which had been condemned by the Congress. The Court of Appeals for the Second Circuit affirmed this decision, Bonwit Teller, Inc., v. N. L. R. B., 197 F.2d 640, certiorari denied 345 U.S. 905, 73 S.Ct. 644, 97 L.Ed. 1342, in a two-to-one decision, Chief Judge Swan dissenting. The majority of the court based its holdings upon constructions of the Wagner Act made by the courts prior to the Labor Management Relations Act of June 23, 1947. It held that the existing no-solicitation rule was discriminatorily violated because the employer conferred on his own premises with his employees. The Board had theretofore ruled that it was an unfair labor practice to relax the no-solicitation rule in favor of one union as against another, or of certain parties as against others but it had not decided that the rule applied to an employer.

There are substantial factual differences between the Bonwit Teller case and the instant controversy. In that case promises of benefit had been made by the employer in the announcement of pending wage increases and threats of reprisal had been made by a supervisory employee to influence an election. Here the one act alleged to have constituted coercion and interference was the refusal after the manager's address to permit the union to use the premises for its campaign. The Board did not charge that respondent denied any employee the right to speak for the union on his free time and no proof to that effect was introduced. It now claims, without any support in the record, that such was the case.

In its reliance in the Bonwit Teller case upon the Clark Brothers case, which was cited in the Congressional reports as being one of the decisions of the Board calling for the enactment of new legislation, the Board indicated its unwillingness to apply Section 8(c) according to its terms.

The dissenting opinion of Chief Justice Swan in the Bonwit Teller case is the correct holding, that Section 8(c) has direct and controlling application and that a no-solicitation rule cannot cut down the rights given the employer under Section 8(c). In light of the sweeping statutory provision and the legislative history a no-solicitation rule cannot prevent an employer from conferring with his own employees on his own premises and on his own time and the rule is not discriminatorily applied because of the employer's refusal to permit the union to campaign on its premises when there are adequate facilities for access to the employees.

The ruling of the Board nullifies the purpose of the amendment expressed in the reports and the discussion, namely, that the enactment was intended "to make it clear that the Board is not to construe utterances containing neither threats nor promises of benefit as an unfair labor practice standing alone or as making some act which would otherwise be legal an unfair labor practice." Supplemental Analysis of Labor Bill as passed by Conference Committee, submitted by Senator Taft, June 12, 1947, 93 Congressional Record 7002. If the employer here had made no speech, its exclusion of the union from its premises would clearly have been legal under the no-solicitation rule, which the Board concedes to be valid. However, this lawful exclusion was converted into what the Board finds to be an unfair labor practice by the Board's linking with the lawful exclusion lawful utterances of the employer which contained neither threats nor promises of benefit.

The Board contends in its brief before this Court that the address of the manager to the employees "removed all doubt concerning the employer's position on the question of representation." The precise purpose of the amendment was to establish for the employer this very right which is denied by the instant Board decision. To compel the employer, if he exercises his right of free speech, to accord, not to employees on their free time,

Republic Aviation Corp: v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, but to union representatives a similar opportunity in working time, limits the application of the freedom of speech provision written in Section 8(c).

The Board decided that the no-solicitation rule controlled the case and that it was discriminatorily violated because the employer himself conferred on his own premises with his employees and then refused a like privilege to the union. None of the Supreme Court cases which it cites declare this doctrine. Republic Aviation Corporation v. N. L. R. B., supra, decided together with N. L. R. B. v. Le Tourneau Co., held that employees could not be discharged for violating no-solicitation rules on their own time within the plant or premises of the employer. It has never been held by the Supreme Court that the no-solicitation rule prohibits an employer from conferring with his own workmen.

Here, too, as in the Bonwit Teller case, the majority of the cases relied on by the Board were decided prior to the enactment of the amendment. Moreover, the decisions cited by the Board present situations so factually different that they cannot be called controlling here. There is no secondary boycott here as in International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299. No discrimination between rival labor unions is involved. Cf. N. L. R. B. v. Waterman Steamship Corporation, 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704, decided 1940. International Association of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50, was a case of a union assisted by the employer against a rival union. No discrimination against an employee is alleged or proved here, as in Republic Aviation Corporation v. N. L. R. B., supra. No exceptional circumstances exist to limit access of the union to the employees who live on the premises and are not readily open to contact by representatives of the union. The premises are not a ship, N. L. R. B. v. Waterman Steamship Corporation, supra, nor a lum-

ber camp, N. L. R. B. v. Lake Superior Lumber Corp., 6 Cir., 167 F.2d 147 nor a company owned and company-dominated town, N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226, 69 S.Ct. 541, 543, 93 L.Ed. 638. These cases lay down the rule that, when the employees live upon premises owned by the employer, controlled by him, and removed from contact with the outside world, reasonable access must be given union organizers. In N. L. R. B. v. Stowe Spinning Co., supra, the mills owned and rented houses to the employees. The school, the building housing the post office and store, were owned or controlled by the mill owners. It was a company town. In this case on the conceded facts there is no such situation. No employees live on the premises. The union hall is very near the store. Frequent union meetings were held during this period for respondent's employees. The union organizers had numerous opportunities for meeting the employees. In fact, they contacted them so satisfactorily to themselves that they thought they had a majority. We think the exception established for the unusual cases cited above does not here apply.

In N. L. R. B. v. Lake Superior Lumber Corp., supra, stressed by the Board, the sole access to the employees was through the lumber camp, and this court held the Board justified in finding that an unreasonable restriction had been placed upon the access of union organizers to the premises. The camp in that case was some seventeen miles from the nearest city on property controlled by respondent and access to it was over respondent's logging roads. The men lived and spent all their free time there, including Sundays. In view of the limited free time of the men and the fact that they lived and worked on the employer's premises, this court sustained the findings of the Board that access to the bunkhouses could not be limited as the employer had determined. As there held, plainly the union organization must proceed upon the employer's premises or be seriously handicapped. However, the

union in that case was not permitted by the court to have access to the men in working time.

The Board contends here that adequacy of facilities is irrelevant. But the Supreme Court in N. L. R. B. v. Stowe Spinning Co., supra, clearly indicates that the question is material. As stated by Justice Murphy, "We cannot equate a company-dominated North Carolina mill town with the vast metropolitan centers where a number of halls are available within easy reach of prospective union members."

Under the statute and under the adjudicated cases enforcement of this order must be denied. To decide that a no-solicitation rule deprives the employer of the right to confer with his employees about any important matter, including unionization, is to deprive him of the freedom of speech specifically guaranteed by the Constitution and by Section 8(c) of the Act. The Board is not authorized to write into the Act a limitation that does not exist.

The Board contends finally that its ruling must be upheld because of the "economic power" of the employer and also because the plant or shop is a convenient place for the union to canvass for members. If this rule is to stand it will be applied to employers of very small resources as well as to the far-flung Woolworth Company. Freedom of speech is guaranteed under the Constitution alike to the weak and the powerful. The Board is not authorized by construction and implication to limit the freedom of speech established in the Constitution and re-emphasized in Section 8(c).

The petition for enforcement is denied.

MILLER, Circuit Judge (concurring).

I am of the opinion that the respondent is not guilty of an unfair labor practice within the meaning of Sec. 8(a)(1) of the Labor-Management Relations Act, as charged by the complaint, paragraph 10 thereof.

The Board found that the respondent had a rule prohibiting solicitation of employees for any purpose at any time within the store; that the store manager Shannon addressed groups of employees during working hours in the store in opposition to the Union; and that respondent refused to permit a Union representative to make an answering address to the employees during working hours in the store. It held that by that refusal, the respondent applied its rule prohibiting union activities on its premises in a discriminatory manner, thereby violating Sec. 8(a)(1) of the Act. Conceding the finding that respondent discriminatorily applied its rule prohibiting union activities on its premises to be correct, I do not think it follows that respondent thereby violated Sec. 8(a)(1) of the Act.

Despite some earlier views to the contrary, it now appears to be conceded by the Board that, in the absence of a rule prohibiting solicitation of employees on company property on other than working time, an employer does not commit an unfair labor practice if he makes a pre-election speech on company time and premises to his employees and denies the union's request for an opportunity to reply. Livingston Shirt Corp., 107 N.L.R.B. 109, decided December 22, 1953, subsequent to the hearing in this case. This is the logical and necessary result of a careful consideration of the wording of Sec. 8(c) of the Act. As stated in the opinion in that case, " * * * we find nothing in the statute which even hints at any Congressional intent to restrict an employer in the use of his own premises for the purpose of airing his views. On the contrary, an employer's premises are the natural forum for him just as the union hall is the inviolable forum for the union to assemble and address employees." This is in accord with the views expressed by the Court of Appeals for the Second Circuit in Bonwit Teller, Inc. v. N. L. R. B., 197 F.2d 640, at page 646, wherein it said, "Nothing in the Act nor in reason compels such 'an eye for an eye, a tooth for a tooth' result so long as the avenues of communication are kept open to both sides." The same Court again recognized this

rule in its later case of N. L. R. B. v. American Tube Bending Co., 205 F.2d 45, at page 46.

However, that Court held in the Bonwit Teller case, one judge dissenting, which ruling was followed in the American Tube Bending Co. case, that the existence of a rule prohibiting solicitation of employees on other than working time changed the refusal by the company of the union's request from an act that was valid into one that was an unfair labor practice. The Board asks us to follow that ruling.

Refusal to permit the Union to use the employer's property during working time for union purposes, although used by the employer for anti-union purposes, may be discrimination against the Union, but I do not construe it as illegal discrimination prohibited by the Act. In any contest between management and labor, each side uses the facilities which are available to it, and nothing in the Act calls for a sharing of those facilities or resources with the other. As said by the Board in the Livingston Shirt Corp. case, supra; " * * * we do not think one party must be so strangely open-hearted as to underwrite the campaign of the other. We reject the idea that the union has a statutory right to assemble and make campaign speeches to employees on the employer's premises and at the employer's expense. We see no real distinction in principle between this and admitting an employer to the union hall for the purpose of making an anti-union speech, a suggestion which our dissenting colleague would doubtless view with abhorrence. We believe that the equality of opportunity which the parties have a right to enjoy is that which comes from the lawful use of both the union and the employer of the customary fora and media available to each of them. It is not to be realistically achieved by attempting, as was done in Bonwit Teller, to make the facilities of the one available to the other."

I do not think the no-solicitation rule in the present case changes this result. If the rule was a valid rule, it is difficult to construe the enforcement of it against the Union as an unfair labor practice. Clearly, it cannot be the enforcement of the rule against the Union that is objected to. In the Livingston Shirt Corp. case, supra, there was a rule prohibiting activities for or against any union during working hours. The non-observance of the rule by the employer and the refusal by the employer of the Union's request for a similar use of the premises was held not to be an unfair labor practice. In N. L. R. B. v. American Tube Bending Co., supra, the Court conceded that if the no-solicitation rule had been limited to working hours, it would have been a valid rule and the refusal by the employer of the union's request would not have been an unfair labor practice. Basically, it seems to me that the validity of the Board's ruling rests upon the alleged invalidity of the rule, in that it prohibited any use of the employer's property, even during non-working hours, the enforcement of which interfered with the employees' right to engage in union activities. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372; N. L. R. B. v. Lake Superior Lumber Co., 6 Cir., 167 F.2d 147. But in the present case, due to the nature of the business, such a rule which prohibits solicitation both during working hours and non-working hours is not invalid. May Department Stores Co., 59 N.L.R.B. 976. In addition, the act complained of dealt with working time only. That portion of the rule pertaining to non-working time was not involved and was not enforced. That portion of the rule which was enforced was a valid regulation. Whether that portion of the rule dealing with non-working time is invalid, and whether an attempt by respondent to enforce it against the Union would constitute an unfair labor practice, presents an entirely different and separable controversy, to be properly determined in a separate proceeding when and if such an act occurs.

The Board, however, attempts to sustain its ruling on a different ground,

namely, that the discriminatory enforcement of the rule against the Union, constituted a violation of Sec. 8(a)(1) of the Act. But Sec. 8(a)(1) does not so provide. It provides that it shall be an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7", which are the rights of self-organization and related activities. Accordingly, discrimination against a union is not an unfair labor practice per se. Unless it unlawfully interferes with the employees' rights or restrains or coerces them in the exercise of such rights, it is not illegal under Sec. 8(a)(1) of the Act. Certainly, it is not restraint or coercion in the usual and ordinary sense of the word for an employer to refuse permission to a union to use the employer's premises during working hours for a union meeting of its employees, who would have to stop work in order to attend the meeting.

Nor do I think such a refusal by respondent interfered with the exercise by the employees of their rights under the Act as that word in the Act is properly interpreted. Clearly, interference on the part of the employer means something more than opposition to the union. The Act recognizes certain permissible anti-union activities, such as those included in Sec. 8(c). Any opposition to the Union or the expression of anti-union views constitutes interference with organizing activities of the Union in a certain sense of the word. But interference under the Act contemplates some sort of activity that prevents an employee from exercising the rights which are given to him by the Act, or those constitutional or common law rights which any individual has, employee or otherwise, such as the right of free speech, the right of assembly, the right to own and use property, the right to make contracts, and the right to be free from intimidation, assault, false imprisonment, and libel and slander. Neither the Constitution, the common law, nor the Labor Management Relations Act confers upon employees the right to use for union purposes the property of their employer during working hours, over the objections of the employer. Certain statutory exceptions to the general rule which recognizes the exclusive use by one of his own property, as are found in Republic Aviation Corp. v. N. L. R. B., supra, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, and N. L. R. B. v. Lake Superior Lumber Corp., supra, 6 Cir., 167 F.2d 147, deal with periods of time other than working time. I am of the opinion that the prohibition in the Act against interference by an employer with the rights of an employee cannot reasonably be construed as granting to employees the right to use their employer's property during working hours for their own purposes over the objections of the employer.

Enforcement of the Board's order should be denied.

McALLISTER, Circuit Judge (dissenting).

There is no issue of freedom of speech in this case. The employer has every right to make known to his employees his views on unionization. The National Labor Relations Board candidly states in its brief that Congress, in enacting Section 8(c) of the Act, was concerned with protecting the right of the employer to make known his views on unionization. But in order to enable a representative of organized workers to have also a fair chance to unionize a plant, the courts have invariably held, in the many cases involving differing circumstances, that an employer who excluded a union representative from the plant property while he, himself, was campaigning against the union, was unfair. The issue in this case is not whether the employer had the right to express his views against the union. It is conceded that he had that right and that he was entitled to make the speeches against the union which he made. Here the question is whether it is unfair for an employer to carry on a campaign against the union and make speeches to his employees during working hours, and, at the same time, to exclude a union representative

from the premises during or after working hours or at any other time, and refuse the right to solicit support for union organization. In brief, the question before us is not one of freedom of speech, but whether the use of certain campaigning methods is unfair.

It is stated in the declaration of policy of Congress, set forth in the Taft-Hartley Act, that "The denial by some employers of the right of employees to organize and the refusal by some employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest"; that the "inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association * * * tends to aggravate recurrent business depressions"; and that it is the policy of Congress to encourage "the practice and procedure of collective bargaining and * * * protecting the exercise by workers of full freedom of * * * self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment". Title 29 U.S.C.A. § 151. This statement by Congress of the policy of the law is set forth to guide the courts in labor cases. In the light of this statement of the policy of Congress, I am of the opinion that the action of an employer in using his premises to make speeches to his employees during working hours and to carry on a sustained campaign against union organization, while, at the same time, forbidding a representative of organized employees the right to solicit or speak on the premises where the employees work, before, during, or after working hours, is unfair; and that it constitutes an unfair labor practice. I do not see that the fact that there may be a union hall several blocks, or several miles, away from the employer's premises makes any difference. It is a substantial hardship on employees, after their day's work, to oblige them to go to a union hall to hear the answer to their employer's arguments as to union organization. This burden upon employees discourages, rather than encourages, employee organization, and as such, is an obstruction to carrying out the objectives of the statute. For, as said in the declaration of policy of the Taft-Hartley Act: "Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards commerce from injury, * * * and promotes the flow of commerce * * * by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees."

Because of the explicit statement of the policy of Congress, set forth in the Taft-Hartley Act, and in accordance with what, in my opinion, has heretofore been the view of eminent authorities in the uniform and repeated decisions of the courts, I am of the view that the Board should be sustained.

In submitting this opinion, it seems proper to present the following factual background.

The F. W. Woolworth Company, respondent, is a retail store with its place of business in Springfield, Ohio.

On September 10, 1951, the Retail Clerks International Association, AFL, hereinafter called the union, having theretofore commenced a campaign for the organization of respondent's employees into the union, filed a petition with the National Labor Relations Board requesting certification as the bargaining representative of respondent's employees. Subsequently, in due course, the Board directed that an election be held among the employees to determine whether they desired to be represented by the union; and, after an informal pre-election conference, the election was scheduled to be held on January 19, 1952.

Respondent company, during the period here involved, had in effect a rule,

which it enforced, prohibiting all solicitations of employees, at all times, on the premises of the company; and such prohibition included solicitations to join labor unions.

On January 9, 1952, Harold Shannon, the manager of the store, made two speeches to respondent's employees, and on January 12, Mr. Shannon made another speech to the employees, in all of which he urged them to reject the union in the forthcoming election.

It was found by the trial examiner that these speeches of Mr. Shannon were within the protection of the "freedom of speech provisions" of Section 8(c) of the National Labor Relations Act as amended, 61 Stat. 136, 29 U.S.C.A. §§ 151 et seq., providing that the expression of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, by an employer or a representative of the employer, should not constitute or be evidence of an unfair labor practice under any provisions of the Act if such expression contains no threat of reprisal or force or promise of benefit. This finding of the trial examiner was affirmed by the Board; and it is conceded that the expression of views in the speeches in question did not constitute an unfair labor practice.

However, Donald A. Filmer, the union's representative, upon being informed of the meetings and speeches, asked Mr. Shannon that he be allowed a similar opportunity to address the employees. The speeches of Mr. Shannon had been made on company time—during working hours for which time the employees were paid—and, as remarked above, on the premises of the company. Mr. Shannon refused the request of Mr. Filmer. It is admitted that the company, in this instance, as always, enforced its "no-solicitation" rule, and would not permit representatives of the union to solicit its employees on company property.

On the basis of the foregoing facts, the Board concluded that respondent's pre-election conduct violated Section 8 (a) (1) of the Act, which sets forth that it is an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of their rights to self-organization and to bargain collectively through representatives of their own choosing. The conduct which the Board specifically found violated the Act consisted of the company's refusal to permit the union to address its employees in the same manner as its manager had addressed them, while, at the same time, it enforced its rule prohibiting union representatives from soliciting its employees on company premises. This, the Board found, was a discriminatory application of the company's rule against solicitation, and amounted to interference with the employees' rights to the selection of a collective bargaining representative of their own choosing.

Many labor cases involving "no-solicitation" rules have been before the courts for adjudication, and such rules have been found non-discriminatory, or discriminatory, according to the varying circumstances of each case. Thus, an employer may not so apply a no-solicitation rule as to preclude solicitation by one union while permitting solicitation by others; Industrial Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; and where a steamship company had issued passes to its ships to the representatives of one union and refused them to another, pending a representative election, it was held that this conduct amounted to an unlawful interference with the employees' rights to self-organization and to collective bargaining through a representative of their own choosing. National Labor Relations Board v. Waterman S. S. Corp., 309 U. S. 206, 60 S.Ct. 493, 84 L.Ed. 704. See also National Labor Relations Board v. Bersted Mfg. Co., 6 Cir., 124 F.2d 409. On the other hand, under normal conditions, solicitation may be properly limited to the employees' non-working time, although even in these cases, such a reasonable rule may be administered in an arbitrary and discriminatory manner.

National Labor Relations Board v. Peyton Packing Co., 5 Cir., 142 F.2d 1009. Normally, an employer cannot forbid union solicitation on company property during non-working time, even where there is no showing that solicitation away from the plant would be ineffective. Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372. In National Labor Relations Board v. American Furnace Co., 7 Cir., 158 F.2d 376, 380, where a company had permitted certain persons to distribute, upon its premises, anti-union literature, pending a representative election, and denied the same right to distribute literature of the union, at relatively the same time and spot, the court, in an opinion by Judge (now Mr. Justice) Minton, held that this was an unlawfully discriminatory act, and that, aside from discrimination, "an employer may not prohibit employees from distributing union literature upon his premises during non-working hours except under exceptional circumstances which are not shown in this case." In department stores, a rule prohibiting union discussion and solicitation, at all times, on the selling floors, has been held to be reasonable, in view of the presence of customers at such places, yet, at the same time, such a rule prohibiting union solicitation off the selling floors during non-working hours has been held invalid. National Labor Relations Board v. May Department Stores Co., 8 Cir., 154 F.2d 533.

In Bonwit Teller, Inc. v. National Labor Relations Board, 2 Cir., 197 F.2d 640, 645, it appeared that the Board, apparently because of considerations mentioned in the May case, supra, having authorized a practice of allowing retail department stores the privilege of prohibiting all solicitation within the selling areas of the stores during both working and non-working hours, Bonwit Teller, a retail department store, availed itself of that privilege. However, during the pendency of an election to determine a bargaining representative for its employees, the president of the company addressed the employees on several different occasions in speeches in which he strongly urged them to vote against a union at an approaching representative election, while, at the same time, he refused a union representative a similar right to address the employees. The court declared that the speeches in question did not, in themselves, constitute an unfair labor practice; but that, since the employer had chosen to avail itself of the privilege of refusing to permit the union to solicit on its property during non-working hours, it was required to abstain from campaigning against the union, at the store. The court, accordingly, held that it was an unfair labor practice, within the meaning of the National Labor Relations Act, as amended by the Taft-Hartley Act, for the president of the employer to make an anti-union speech in the store during non-working hours and then deny a union official the right to speak to the employees in the store during non-working hours. In speaking for the court, Judge Augustus Hand, referring to the company's availing itself of the privilege of prohibiting all solicitation on its premises, said: "Bonwit Teller chose to avail itself of that privilege and, having done so, was in our opinion required to abstain from campaigning against the Union on the same premises to which the Union was denied access; if it should be otherwise, the practical advantage to the employer who was opposed to unionization would constitute a serious interference with the right of his employees to organize."

The Bonwit Teller case was followed, in the Second Circuit, by National Labor Relations Board v. American Tube Bending Co., 205 F.2d 45, 46, involving an employer and the employees of an industrial plant in which a rule was enforced prohibiting any solicitation of the employees during working or non-working hours. Pending the holding of a representative election, the president of the company addressed the employees in an effort to persuade them that it was not in their interest to organize as a union, and ig-

nored requests of a union representative that he also be given the opportunity to address the employees. In holding that the Bonwit Teller case ruled the case at bar, Judge Learned Hand, speaking for the court, declared that "since the respondent refused to allow any solicitation on the premises during non-working hours, that was in itself an unfair labor practice, for it did not operate a retail store [which was of the class of businesses authorized, by the Board, to prohibit solicitation]; and it was an added unfair practice for it to address the employees, while such a rule was in force."

It is contended by the respondent that the order of the National Labor Relations Board defeated the intent of Congress which, in Section 8(c) of the Act, insured to employers, as well as to labor organizations, full freedom to express their views to employees on labor matters; and respondent submits that such freedom cannot be restricted by a provision circumscribing the time and place for the dissemination of such views. But the freedom of speech insured by the Act to employers is not here questioned. It was found by the Board that the employer had the right to express its views in the speeches which its president delivered. No unfair labor practice was based on any such expressions of opinion by the employer, for it is conceded that they did not constitute an unfair labor practice, and the employer had every right, under the law, to communicate its views by such speeches to the employees. The unfair labor practice upon which the Board's order was based was the making of such speeches while, at the same time, enforcing a rule prohibiting the solicitation of its employees on its premises at any time by union representatives. It is true that the National Labor Relations Act did not specifically make such conduct an unfair labor practice. As said in Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L.Ed. 1372: "The Wagner Act did not undertake the impossible task of specifying in precise and unmistakable language each incident which would constitute an unfair labor practice. On the contrary that Act left to the Board the work of applying the Act's general prohibitory language in the light of the infinite combinations of events which might be charged as violative of its terms. Thus a 'rigid scheme of remedies' is avoided and administrative flexibility within appropriate statutory limitations obtained to accomplish the dominant purpose of the legislation. * * * So far as we are here concerned that purpose is the right of employees to organize for mutual aid without employer interference. This is the principle of labor relations which the Board is to foster." It was the making of speeches by the employer against the union on the company premises, while at the same time prohibiting union representatives from soliciting the employees, which the Board found was an unfair labor practice, and which, in the language of Judge Augustus Hand, in the Bonwit Teller case, constituted a serious interference with the rights of the employees to organize.

Respondent argues that an individual property owner has the right to regulate his own private property so as to exclude therefrom such persons as he may desire to have excluded. In National Labor Relations Board v. Lake Superior Lumber Corp., 6 Cir., 167 F.2d 147, 151, this court, in considering a similar contention, referred to the language of the Supreme Court in Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, to the following effect: " 'We do not agree that the corporation's property interests settle the question. * * * Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.' " And the court went on to observe that the right of access to the employer's property, under reasonable regulations, for the purpose of exercising the rights guaranteed by the National Labor Relations Act, had been

recognized and enforced, both in this circuit, and in other circuits. Moreover, it also pointed out, as the Supreme Court observed in Republic Aviation Corp. v. National Labor Relations Board, supra, that conditions may make it necessary to work out "an adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society." 324 U.S. at page 797, 65 S.Ct. at page 985.

Thus, in National Labor Relations Board v. Lake Superior Lumber Corp., supra, this court emphasized that, as stated by the Supreme Court in Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, the Act included the right of the employees to freely discuss and be informed concerning their collective bargaining rights, and the *correlative* right of the union to discuss with and inform them concerning the matters involved; and, accordingly, the court held that union organizers had the right to visit employees on property of the employer under reasonable regulations where the circumstances were such that union organization must proceed upon the employer's premises or be seriously handicapped.

The Taft-Hartley Act, amendatory of the National Labor Relations Act, declares it to be the policy of the United States to encourage the practice of collective bargaining and to protect the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing. Title 29 U.S.C.A. § 151. In the foregoing, the Taft-Hartley Act does not alter the original Act. As Mr. Chief Justice Hughes said in Republic Steel Corp. v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6; the

above mentioned remedial purposes of the Act are quite clear.

As remarked in the Bonwit Teller case, the place of work has been recognized to be the most effective place for the communication of information and opinion concerning unionization. There is no reason to doubt the statement that: "Union meetings to organize employees tired from their day's work and faced with added travel are usually poorly attended. Comprehensive individual solicitation off the premises is rarely achieved because of cost, time, and difficulty of locating workers at home. And campaigning by individual employee-organizers on a catch-as-can basis in the plant, even when not precluded by no-solicitation rules, hardly substitutes for the systematic arguments that can be presented at a mass meeting on working time." 61 Yale L.J. 1074–1076.

In the case at bar, respondent enforced a rule prohibiting all solicitation of employees at all times on and throughout its property and premises, which it was privileged to do, by the authorization of the National Labor Relations Board, on account of the nature of its business which was a department store. Because of the enforcement by the employer of *this rule prohibiting all solicitation of its employees at all times,* while, at the same time, it campaigned on its premises by speeches to its employees urging them to reject the union, we are of the opinion that these actions were a serious obstruction to carrying out the policy of Congress to encourage the practice of collective bargaining, and to protect the exercise by workers of full freedom in selecting representatives of their own choosing; and that such conduct constituted an unfair labor practice.

Respondent refers to the legislative history of the Taft-Hartley Act as disclosing that the order of the Board holding the action of respondent to constitute an unfair labor practice was contrary to what Congress intended in its enactment of the "freedom of speech" provision. There is, in our view, nothing to indicate that the Board's interpretation of Sec-

tion 8(c) defeated the Congressional intent, as manifested therein, or in the legislative history. The holding of the Board is in conformity with the adjudications of the courts in the past, notably in the Bonwit Teller case; and Congress has manifested no disapproval of such conclusions or any intent to avoid or change the results of such holdings.

As stated by Judge Miller in his concurring opinion, it seems now to be conceded by the Board that, in the absence of a rule prohibiting solicitation of employees on company property on other than working time, an employer does not commit an unfair labor practice if he makes a pre-election speech on company time and premises to his employees and denies the union's request for an opportunity to reply. Livingston Shirt Corp., 107 N.L.R.B. 109. It is said that, in the instant case, the portion of the company's rule pertaining to non-working time was not involved, and was not enforced, and that the question whether an attempt by respondent to enforce it would constitute an unfair labor practice, presents an entirely different and separable controversy, to be properly determined in a separate proceeding when and if such an act occurs. But it would clearly appear that the portion of the company's rule pertaining to non-working hours was involved and was enforced in this case, and that the determination whether the enforcement of such portion of the rule constitutes an unfair labor practice is properly before us now and calls for determination in this proceeding. For it is stipulated "That at all times material to the events involved in the above-captioned matter and for some period of time previous thereto, Respondent enforced a rule prohibiting all solicitations of employees at all times on and throughout its property and premises." This is the portion of the rule which I believe to be invalid, under the decision of the Board in the Livingston Shirt Corp. case and under the authority of National Labor Relations Board v. American Tube Bending Co., 2 Cir., 205 F.2d 45, discussed in the concurring opinion.

In accordance with the foregoing, it is my view that a decree should be entered enforcing the order of the National Labor Relations Board.