# REPUBLIC AVIATION CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

## No. 287.

Circuit Court of Appeals, Second Circuit.

March 22, 1944.

---

J. Edward Lumbard Jr., of Washington, D. C., and John J. Ryan and Donovan, Leisure, Newton & Lumbard, all of New York City (Granville Whittlesey, Jr., of New York City, Frederick M. Davenport, Jr., of Washington, D. C., and Paul J. Quinn, of New York City, of counsel), for petitioner.

Howard Lichtenstein, of Washington, D. C., Alvin J. Rockwell, Gen. Counsel, and Joseph B. Robison and Eleanor Schwartzbach, Attys., National Labor Relations Board, all of Washington, D. C., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This case raises two questions. The first is whether the Board has power to forbid an employer, who has promulgated a rule, generally forbidding solicitation of any kind in his plant, to apply it to prevent electioneering for a union during the lunch hour. The second is whether the Board may compel an employer whose plant has not yet been "organized," to allow employees to wear "shop steward" buttons while at work, or whether he may confine the wearing of such buttons to those who are "stewards" of a union of his own employees. The first question is to be distinguished from those situations in which the employer invokes such a rule, not to preserve his business from the agitation and disturbance which will follow upon electioneering on the premises, but as a means of preventing the unionization of his employees. The examiner in the case at bar had found that the company had discharged one of the four employees in question, Stone, because of hostility to his efforts to organize the plant. The Board reversed this finding, and for that reason the question comes to us stark and bare; whether the Board may declare that the enforcement of the rule without any animus against unions, general or particular, may be an "unfair labor practice." As the courts have already dealt with it in several decisions, it will be best to consider these before stating our own views.

The first is a square holding by the Sixth Circuit (Midland Steel Products Co. v. N. L. R. B., 113 F.2d 800, 805, 806), that a rule which forbids "solicitation" in a plant is "reasonable," that the question is one of "law," and that it is for the court, even when the employer invokes it, not against "solicitation" during working hours, but during the lunch hour. The second decision is of the Fifth Circuit (N. L. R. B. v. Williamson-Dickie Manufacturing Co., 130 F.2d 260, 267, 268). The Board had held that the company discharged one, Meek, "discriminatorily," and the court reversed this finding as unsupported by any evidence. However, Meek had concededly violated a rule which forbad circulating petitions in the plant, by getting signatures during the lunch hour upon a petition authorizing the appointment of an attorney for the employees to recover under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Even if the employer did not, as the court found, use the rule as a cover to stop union agitation, nevertheless Meek had been discharged for refusing to obey it; and it followed that the court, in justifying the discharge, necessarily held that the rule was valid. It is true that the Board (35 N. L. R. B. 1220, 1245-1248) did not pass upon the validity of the rule, since it was not obliged to do so once it found the employer had used it improperly; yet we can scarcely call the decision merely a dictum in this aspect. Unless the court meant to hold that the rule was inevitably valid, it should have remanded the case to the Board to pass upon it in the existing circumstances. National Labor Relations Board v. William Davies Co., 7 Cir., 135 F.2d 179, 182, does not raise the point because the employee electioneered during working hours, a very different matter. In National Labor Relations Board v. Denver Tent & Awning Co., 138 F.2d 410, the Tenth Circuit affirmed the Board's finding that the enforcement of such a rule had been invalid, but only because it found that it had been passed in order "to discourage membership in the local union." The court apparently assumed, as a general proposition, that such rules, if neither adopted, nor applied, in hostility to unions, were lawful; and perhaps by implication that they were beyond the reach of the Board. The same is true of Carter Carburetor Co. v. National Labor Relations Board, 8 Cir., 140 F.2d 714. In National Labor Relations Board v. Cities Service Oil Co., 2 Cir., 122 F.2d 149, we held that a shipowner must give passes to union representatives to board ships in order to learn what grievances, if any, the crew might have, that being the only effective way open to secure redress. It is true that we also provided that the passes should be forfeited if their users took the opportunity while on board to solicit new members or to collect dues. However, our decision is not relevant here. The representatives who sought the passes were not members of the crews, and had no right to be on the ships by virtue of their employment, as Stone had a right to be in the factory in the case at bar. Whether a union representative shall be allowed to board a vessel, or enter a plant, merely to electioneer or to collect dues, is one thing: whether an employee, already lawfully in the plant, shall be forbidden during his lunch hour to try to persuade his fellows to join the union, is another. All that we held was that electioneering and collecting

dues on board ship "were not shown by the Board to have been required 'for the purpose of collective bargaining or other mutual aid or protection' even if they are guaranteed under Section 7 [29 U.S.C.A. § 157] under some circumstances." 122 F.2d at page 152.

Thus it appears that there is no settled body of decision against the Board's order, and we feel ourselves free to consider the question as res integra. The question is what is often called a "mixed question of law and fact"; and it is true that it comprises, or should comprise, two quite different determinations: (1.) what in fact will be the prejudice to the interests of the employer in allowing electioneering to go on during lunch hours, and what will be the benefit to the employees; and what will be his benefit and their prejudice in disallowing it; (2.) whether the benefit shall prevail over the prejudice, or vice versa. The language of § 8 is too indefinite to allow the tribunal which enforces it to avoid the second of these inquiries; it is the same question that often arises in the law of torts: e.g. negligence, trade-marks, unfair trade, indeed all questions which depend upon what conduct is "reasonable." In all these the court balances the interests against each other, and awards priority as seems to it just. In the first determination: i.e. what actually is the prejudice and what the benefit, the Board has an acquaintance with the subject matter greater than ours; and while in the case at bar it did not take evidence upon the issue, in matters involving general familiarity with the conditions of industry it may draw upon that acquaintance, certainly if it gives the employer an opportunity to present his own side in any specific case. In the case at bar it referred to certain of its earlier decisions in which it had held that the discussion of unionism and collective bargaining—including, we assume, electioneering—in the plant, if not during working hours, was permissible. In re Denver Tent & Awning Co., 47 N. L. R. B. 586; In re United States Cartridge Company, 47 N. L. R. B. 896; In re Carter Carburetor Co., 48 N. L. R. B. 354. We have examined these, but we cannot find in them any statement of the effects upon the employees of denying them the privilege of such discussion, or upon the employer of granting it; only a general conclusion that it is reasonable to allow the discussion to go on.

Such a finding does not enable us to distinguish that part of the determination which lies within our powers of review—the appraisal of the conflicting interests and the award of priority between them—from that part which is wholly the Board's—the ascertainment of the facts. Nevertheless, this does not require us to send the case back for specific findings as to those facts. The problem is a general one, applying to industry at large, although of course it may have different aspects in different factories. As we have said, the Board may draw upon its general acquaintance in dealing with such conditions; that is one of its most important functions. If the employer wishes to show what are the results in his specific case, he must do so at the hearings. On this record, we are certainly not called upon, nor should indeed be justified, to consider the question of law: i.e. the priority to be awarded between the conflicting interests, which lies enmeshed in the mixed question that is involved. And this is particularly true, because, even if by specific findings the legal question were brought out clear and definite, we should still have to give presumptive validity to the Board's decision. For we understand that on such issues it is only in cases where we believe that there is no reasonable warrant for the priority actually awarded that we may intervene. For these reasons we·affirm the order as to Stone.

The second question is the discharge of the three employees who wore shop stewards' badges in the factory while the plant was not organized, and who were discharged because they would not take them off. The Board found that wearing a steward's button did not represent that the employer either approved or recognized the union in question as the representative of its employees. We are certainly in no position to gainsay that finding; it was pre-eminently one for those versed in trade-union lore. Moreover, the Board found that there was no evidence that the buttons had in fact deceived any of the employees who saw them. Conceivably, there might be those who would in this way be led to believe that the plant had been unionized without their knowing it, and who might be induced to join for that reason; but, so far as we can see, that was most unlikely. In any event it is a possibility whose substance it was certainly for the Board to detect, if it had any.

In the light of what we have already said, it becomes unnecessary to decide whether there was "substantial evidence" to support the finding that Bofinger, Doglione and Nepsee engaged in any unfair labor practices. The discharges, being for legitimate union activities, were basis enough for the order.

An enforcement order will pass.

SWAN, Circuit Judge (dissenting in part).

I disagree with so much of the opinion as relates to the discharge of Stone for violation of the company rule against soliciting of any type. Stone knew of the rule and knew that the company construed it to forbid union electioneering on the premises during non-working hours. He violated it deliberately in order apparently to make a test case. The Board held "that, in the absence of special circumstances, a rule prohibiting union activity on company property outside of working time constitutes an unreasonable impediment to self-organization, and that discharges for violation thereof are discriminatory." A rule against electioneering on company premises is of course an impediment to unionization, whether applied during working or non-working hours; but only if it is an "unreasonable" impediment is it invalid. Concededly it is a reasonable restriction during working time. There is not much judicial authority, but all the judges who have previously considered such a rule, appear to have thought it also reasonable when applied to non-working hours. The reasons for this view are well expounded by Judge Allen in the Midland Steel Products case, 113 F.2d 800, at 805, 806. Solicitation, argument and the hurling of epithets by rival union organizers during the lunch hour may reasonably be expected to carry over into working hours and to impair the concentration, cooperation and harmony which are essential to efficiency and safety in performance of work in a manufacturing establishment. Against these considerations the Board has advanced no arguments. Nor has it made any findings that electioneering outside the company's premises would be so difficult as to make the rule unreasonable as applied to this particular plant. In the absence of some such special circumstance I think the rule should be held valid. The Board, however, by its ipse dixit and without stating reasons seems to have inverted the process and to require the employer to show special circumstances to justify the rule. My colleagues think this is within the Board's exclusive province. I cannot agree, for I am unable to see why the Board is supposed to have more competence than the courts to pass upon the reasonableness of the rule in the absence of evidence tending to show that it unduly interferes with the employees' right to form, join or assist labor organizations.