## NATIONAL LABOR RELATIONS BOARD v. LAKE SUPERIOR LUMBER CORPORATION.

### No. 10410.

Circuit Court of Appeals, Sixth Circuit.

April 5, 1948.

Mozart Ratner, of Washington, D. C. (Gerhard P. Van Arkel, of Washington, D. C., Morris P. Glushien, of New York City, A. Norman Somers, Dominick L. Manoli and Thomas B. Sweeney, all of Washington, D. C., on the brief), for petitioner.

William F. Pellow, of Bessemer, Mich. on the brief), for respondent.

Before SIMONS, ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., petitions for enforcement of its order issued against the respondent, Lake Superior Lumber Corporation, on August 21, 1946, following a hearing based upon charges, filed by International Woodworkers of America, C. I. O., Local 15, that the respondent had engaged in unfair labor practices within the meaning of § 8(1) of the Act. Respondent is a Michigan corporation, engaged in business in the State of Michigan where the alleged unfair labor practices occurred. It is conceded that it is engaged in commerce within the meaning of the Act; accordingly, no jurisdictional question is involved.

In the conduct of its business, respondent operates lumbering camps at convenient locations in its timber tract. The camps are temporary installations, housing in each instance approximately 80 woodsmen. After the immediately accessible area has been worked over the camp buildings are either moved, torn down or abandoned. Each camp has three or four bunkhouses, a combined kitchen and mess hall, storage buildings, a washhouse, an office, tractor sheds, a barn for the horses, a shop, warehouse, pump house and a recreation hall. Each bunkhouse houses from 32 to 40 men. There are no interior partitions. The men sleep in double deck cots arranged in two rows along either side of the bunkhouse. The only additional furnishings consist of benches at the foot of the cots. The respondent has maintained strict rules forbidding salesmen or other visitors transacting business in the bunkhouses. It has regularly enforced a "lights out at 8:00 p.m." rule. The camp buildings are situated on land controlled by the respondent. Access is over the respondent's logging railroads or by roads connecting with the main highways built as aids to the logging operations. At the time of the hearing the respondent's camps were 17 or 18 miles from Ontonagon, the nearest city. The woodsmen work in the woods from 7:00 a.m. to 4:00 p.m. six days a week, and usually spend all their time, including Sundays, in the camps. They do not receive their meals and lodging as a part of their remuneration, but on each pay day deductions are made on the basis of a daily charge for these items. There is a heavy rate of turnover among the employees, reaching during a six months' period in 1945 nearly 345 percent. Some of this was due to war conditions, such as the draft and high wages in war plants.

On August 12, 1937, the Union filed charges against the respondent. Following conferences, participated in by the Board's agents, the Union and the respondent executed on September 14, 1938 a stipulation, which provided that the respondent would not interfere with its camp employees in the exercise of their rights guaranteed by the National Labor Relations Act. It further provided—

"Without admitting that denial or refusal of permission constitutes an unfair labor practice * * *, the Corporation none-the-less herewith grants permission until the matter shall have been determined by decision of the Supreme Court of the United States, to the organizers of the union, * * * to visit their members and other employees on its camp sites lo-

cated in various places in the State of Michigan, upon conditions to be posted by the Corporation. * * * "

This stipulation of settlement was approved by the Board on September 27, 1938. The conditions referred to were contained in another stipulation executed by the Union and the respondent on October 3, 1938. It provided that only one representative of a union would be allowed to visit the respondent's property at one time; designated the time and place for such visit as one night per week in each camp; that while at the camp the union representative would discuss union problems with the employees at the recreation hall exclusively and would not enter the sleeping quarters of the men at any time or for any purpose; and that such representative should arrive at the camp not earlier than 5:30 of the afternoon of the day of such visit and should leave not later than half an hour after breakfast the following morning. No complaint was issued in this case which was closed on the Board's records on January 17, 1939.

On July 23, 1943, John Haney, one of respondent's woodsmen, solicited employees in a bunkhouse of Camp 14, in the evening after working hours, to join the union. Camp foreman Schlief observed this action and stopped him, telling him that any organizing must be done in the recreation hall. On June 7, 1945, the Union notified the respondent of its intention to withdraw from the stipulation of October 3, 1938, "because this stipulation restricts us and our members from taking advantage of our organizational rights under the National Labor Relations Act." The respondent requested a specific statement of the Union's criticism of the existing arrangements and expressed willingness to give further consideration to matters which the Union thought unfair. The Union objected to the limitation of visiting union agents to one representative and to the requirement that permission be secured before entering the camps and claimed that the recreation halls were too small for conducting union meetings. It contended that the respondent did not have the authority under the Act to designate the time and place to be used in conducting union business so long as it did not interfere with production. By a letter of July 17, 1945, the respondent offered to modify the rules and permit the weekly visit to its camps to be made by two union representatives and to enlarge its recreation halls on proof that they would not accommodate the meetings. It offered to consider such other modifications as the Union cared to suggest.

The union agents complied with the rules and regulations until early in July 1945, at which time two union officials visited camps on other nights of the week than those provided. They were not interfered with on these visits. However, on July 26, 1945, camp foreman, Felix Petka, at Camp 17, told the union representative that he had orders not to admit him unless it was the day provided by the stipulation and that he would have to leave immediately. On Friday, August 24, 1945, union officials went to Camp 14 to conduct routine union business. They knew that the established day for the visit for union representatives was not Friday. They arrived at supper time and ate with the employees in the mess hall. When they left the mess hall camp foreman Schlief advised them he was acting under orders and that they would have to leave the camp immediately. The charge in the present case was filed with the Board on August 25, 1945, in which the unfair labor practices were specified as the limitation by the respondent of the visits of union representatives to one day a week with permission to enter only the recreation hall for the purpose of carrying on union activity, and the prohibition by the respondent against union representatives entering a bunkhouse at any time to visit members of the union, the union contending that its representatives should be permitted to enter the Company's lumber camps, the recreation halls and visit with members in the bunkhouses at any time which did not interfere with the working schedule of the employees.

The Board found that the 1938 settlement agreement was not a bar to the proceedings; that the respondent had engaged in unfair labor practices within the meaning of § 8(1) of the Act; and ordered the respondent to (1) cease and desist from interfering with its employees in the exercise of the rights to self-organization by pro-

hibiting its employees from engaging in union activity in bunkhouses during their non-working time and by denying union representatives reasonable access to its camps and bunkhouses; (2) rescind immediately its rules restricting the rights of its employees to engage in union activity on company property during their free time; subject to lawful and reasonable conditions admit representatives of labor organizations to its camps and bunkhouses for the purpose of consulting its employees in regard to their right under the Act to self-organization; and to post immediately appropriate notices to that effect at its plant and camps near Ontonagon, Michigan. In its answer to the present petition for enforcement the respondent contends that the evidence does not support the finding that the 1938 settlement agreement is not a bar to the present proceedings, that the Union could rescind such agreement, or that its pertinent provisions were no longer effective; that it had engaged in unfair labor practices as charged in the complaint; that it had interfered with the legitimate union activities of woodsman Haney; that it enforced unlawful limitation upon the access of union representatives to its camps; that its rule against solicitation in the camp bunkhouses was not reasonable and necessary to the maintenance of production or discipline in view of the special circumstances existing; and that the Board's ruling was in violation of its property rights in contravention of Amendment Article 5 of the Constitution of the United States.

▮▮ The trial examiner found that respondent's actions in prohibiting woodsman Haney from soliciting union membership in the bunkhouses violated § 8(1) of the Act and also the express terms of the 1938 settlement agreement, and ruled accordingly that the settlement agreement did not constitute a bar to this proceeding. The Board, however, deemed it unnecessary to predicate its concurrence in the ruling upon the trial examiner's finding, although it indicated its agreement with such finding. It held that the pertinent provisions of the settlement agreement were no longer effective because the decision of the Supreme Court in Republic Aviation Corpo-

ration v. N.L.R.B. (N.L.R.B. v. Le Tourneau Company), 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372, 157 A.L.R. 1081, determined the question and satisfied the conditional terminal date of the settlement agreement. We agree with the ruling, although not with the reasoning, of the Board. The settlement agreement, effective until the matter was determined by the Supreme Court, granted permission "to organizers of the union" to visit employees in the camp sites. The Supreme Court opinions referred to dealt with the rights of employees rather than union organizers. The statement in the opinion, relied upon by the Board, that the cases were not like a lumber camp where union organization must proceed upon the employer's premises or be seriously handicapped, is dictum. While it indicates what the Supreme Court may rule in a subsequent case involving union organizers visiting employees in a lumber camp, the case itself is not an authoritative ruling to that effect and does not commit the Supreme Court to such a ruling when such an issue is later actually presented. Brush v. Commissioner, 300 U. S. 352, 373, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428; Wright v. United States, 302 U.S. 583, 593, 58 S.Ct. 395, 82 L.Ed. 439. However, Section 10(a) of the Act, § 160 (a), Title 29 U.S.C.A., provides that the Board shall have exclusive power to prevent any person from engaging in any unfair labor practice, which power "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." Although settlement agreements approved by the Board should be and usually are respected by it as a matter of policy, yet the Board is not barred or estopped thereby as a matter of law from later proceeding under the Act. Wallace Corp. v. N.L.R.B., 323 U.S. 248, 254, 65 S.Ct. 238, 89 L.Ed. 216; N. L. R. B. v. Thompson Products Co., 6 Cir., 130 F.2d 363, 366, 367. See N. L. R. B. v. Prettyman, 6 Cir., 117 F.2d 786, 792.

▮ The right of employees to engage in the union activities guaranteed to them by the Act on the property of the employer, during the employees' free time, under reasonable regulations, is settled by the ruling of the Supreme Court in the Republic Avia-

tion Corporation and Le Tourneau Company cases, supra. It has also been so held and applied in N. L. R. B. v. American Furnace Co., 7 Cir., 158 F.2d 376, 380; N. L. R. B. v. May Department Stores Co., 8 Cir., 154 F.2d 533, certiorari denied, 329 U.S. 725, 67 S.Ct. 72.

We believe that the ruling in the Republic Aviation Corporation and Le Tourneau cases, supra, together with the later rulings of the Supreme Court in Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, and in Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, are also controlling in favor of the right of union organizers to visit employees on the property of the employer under reasonable regulations, where the circumstances are such "that union organization must proceed upon the employer's premises or be seriously handicapped." Republic Aviation Corp. v. N. L. R. B., supra, at page 799, of 324 U.S. at page 986 of 65 S.Ct. As pointed out in that case, conditions may make it necessary to work out "an adjustment between the undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments. Like so many others, these rights are not unlimited in the sense that they can be exercised without regard to any duty which the existence of rights in others may place upon employer or employee. Opportunity to organize and proper discipline are both essential elements in a balanced society." In Thomas v. Collins, supra, the Court stated 323 U.S. at page 534, 65 S.Ct. 315, 89 L.Ed. 430, that the Act included the right of the employees to freely discuss and be informed concerning their collective bargaining rights, and the correlative right of the union to discuss with and inform them concerning the matters involved. In Marsh v. Alabama, supra, the Court upheld the right of a member of the public to use the sidewalk of a company-owned town contrary to regulations of the town's management, where such regulations interfered with the constitutional rights of the person so using the company's property. The Court said in that case—[326 U.S. 501, 66 S.Ct. 278] "We do not agree that the corporation's property interests settle the ques-

tion. * * * Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it."

This right of access to the employer's property under reasonable regulations for the purpose of exercising the rights guaranteed by the National Labor Relations Act has been recognized and enforced both in this Circuit and in other Circuits. N. L. R. B. v. West Kentucky Coal Co., 10 N.L. R.B. 88, 105–106, 133, enforced with modification not here material in 6 Cir., 116 F.2d 816; N. L. R. B. v. Cities Service Oil Co., 2 Cir., 122 F.2d 149; Richfield Oil Corp. v. N. L. R. B., 9 Cir., 143 F.2d 860.

The Board recognized in the present case, as is also recognized by the decisions above referred to, that such right of an employee or a union representative is not unlimited. Reasonable rules by the employer limiting the exercise of this right, which are necessary in order to maintain production or discipline, will be upheld. The "lights out at 8:00 p. m." rule in the present case, which would bar union activities after that hour is an example of such a rule. The real question presented by the present case is whether the respondent's rules limiting the visits of union representatives to one representative once a week with contact with the employees limited to the recreation hall and barred in the bunkhouses is a reasonable one under the existing conditions. Respondent's limitation of the right of access to one representative once a week has very little to support it. It is based largely upon the possibility of other unions seeking the same right at some time in the future. Such a condition does not exist at the present time. When and if it does exist, suitable rules to meet such conditions can be made effective. We agree with the Board's ruling that until then the limitation is unnecessary in order to maintain production or discipline and is unreasonable. The limitation of union activities to the recreation hall and barring them completely from the bunkhouses is a much closer question. Respondent's contention is that permitting union activities in the bunk-

houses would interfere with the harmony of the camp, incline the men to stay up beyond the time they usually went to bed, thus interfering with their work the next day and probably causing them to quit and go to some other place where they would not be so disturbed. Whether or not that would be the result is uncertain; it is not established as a fact by the evidence. However, opinion evidence to that effect was considered by the Board. The Board also had before it the factual evidence that the bunkhouses were used not only for sleeping but for sitting around in before the woodsmen were ready to go to bed, and that a rule prohibiting union activities in bunkhouses was not in effect in other camps throughout the territory. It is a logical and warranted deduction that after the evening meal and before 8:00 p.m. the woodsmen engaged in conversation and discussion generally. There was no evidence that the woodsmen objected to union activities in the bunkhouses before 8:00 p.m. If the "lights out at 8:00 p.m." rule is strictly enforced, as it seems to be, respondent's argument that the men will be inclined to stay up beyond a reasonable hour, loses most of its force. It will be noticed that the limitation of access to the bunkhouses is complete; access is not permitted even on Sundays or during a period in the evening ending earlier than 8:00 p.m. In view of the limited free time available to the employees and the practical difficulties involved in contacting them after the evening meal in any place other than in the bunkhouses, union organization would as a practical matter be seriously handicapped by restricting such activities to the recreation hall. It was the Board's duty to determine what in fact would be the prejudice to the interests of the employer in permitting access to the bunkhouses, and what would be the benefit to the employees, and whether the benefit prevailed over the prejudice, or the prejudice prevailed over the benefit. This presented a mixed question of law and fact. The Board's general conclusion that the limitation of access to the bunkhouses interfered with the rights of the employees can not be set aside by this Court if there is a reasonable warrant for it in the record. Republic Aviation Corp. v. N.L.R.B., 2 Cir.,

142 F.2d 193, 196, affirmed, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 557, 157 A.L.R. 1081. Such a basis for its conclusion appears to exist.

Respondent has referred us to the recent decision in N.L.R.B. v. Stowe Spinning Co., 4 Cir., 165 F.2d 609. In our opinion, it involved an entirely different question and is not applicable. Free use of a company's private property for purposes of union organization, rather than access to employees in the property, was the issue. The employees neither lived in the property involved, nor, as a matter of right, spent any of their free time there.

The Board's order directs the rescission of the present rules; it recognizes the right in respondent to make new rules embodying lawful and reasonable conditions. A decree of enforcement will be entered.