**UNITED FARM WORKERS UNION, AFL–CIO, Plaintiff,**

**v.**

**MEL FINERMAN CO. et al., Defendants.**

**Civ. A. No. C–5216.**

United States District Court, D. Colorado.

Aug. 20, 1973.

---

Jonathon B. Chase, Boulder, Colo., for plaintiff.

John Edward Price, Center, Colo., for defendants.

## OPINION AND ORDER

CHILSON, District Judge.

The matter presently before the Court is plaintiff's motion

"for a preliminary injunction restraining defendants from preventing plaintiff's members from having access to the labor camps owned or controlled by the defendant Finerman for the purpose of. communicating with the occupants thereof and to prevent the defendant Finerman from retaliating in any way against the occupants of the labor camps as a result of their communicating with plaintiff's members during the pendency of this action."

(Plaintiff's motion for preliminary injunction.)

An evidentiary hearing was had on August 6 and 7, 1973, at the conclusion of which, the Court ordered simultaneous briefs filed. The briefs have been received and considered by the Court.

The essence of the controversy is a labor dispute between the plaintiff and Finerman.

The plaintiff, a union of farm workers, and defendant, Finerman, which grows and harvests lettuce in the vicinity of Center, Colorado, and elsewhere, formerly were parties to a collective bargaining agreement which expired in 1973. The agreement was not renewed and plaintiff called a national strike against Finerman. In conjunction with the strike, plaintiff is attempting to organize Finerman's present employees in order that they will become members of the plaintiff union and join with the plaintiff in its strike.

The employees that plaintiff seeks to organize are migrant farm workers, who while so employed, live in labor camps operated and controlled by Finerman. The camp located in Center, Colorado, is here involved.

In its complaint, plaintiff alleges that Finerman has refused to permit plaintiff, through its field organizers, to come upon the grounds of the labor camp, although permission to go into the camp has been granted to the Teamsters Union representatives and representatives of the Teamsters have on at least two occasions, conducted organizing activities within the camp.

The evidence discloses that Finerman maintains the camp for the use of the migrant workers employed by it. The camp consists of a barracks-type sleeping facility, (bunkhouse) a dining hall, and a common bathing and toilet facility. The migrants make their own arrangements for food and its preparation and service in the dining facility.

The facilities are provided without charge to the migrants, but the facilities are of substantial value to the migrants, for without the facilities, the migrants would be required to provide their own housing at their own expense, if indeed, such housing could be obtained in the area in which the migrants work.

The camp can accommodate about 200 men and is used exclusively to house Finerman's migrant workers. It is located within the corporate limits of the town of Center, Colorado, which has a population of about 1400 persons and is either fenced or posted with signs indicating it is private property. Except for the facilities mentioned, there are no

other improvements; no business other than the labor camp is conducted thereon, and no municipal or public improvements such as public streets or parks are located thereon.

The camp is located about ten blocks from the business district of the town of Center, and within walking distance from the camp.

The bunkhouse is one large building, the interior of which is divided by partitions into three large rooms. Within each room are rows of cots about three feet apart. The bunkhouse, together with the dining facilities and the bath and toilet building, constitute what plaintiff properly refers to in the complaint as the migrant's "home away from home".

The evidence discloses that some employees of Finerman took steps to prevent plaintiff's representatives from entering the camp, but at the hearing, Finerman stated its policy to be to allow plaintiff's representatives access to the camp with reasonableness and common sense the only restrictions.

The Court finds that the defendants, Andy Barela, Sheriff of Saguache County, Colorado, and Emory Brewer, Chief of Police of Center, Colorado, did not commit or participate in any acts to prevent plaintiff's representatives from obtaining access to the camp, and that the acts of Finerman's employees, including those of the guards employed by Finerman to police the camp were not authorized by said defendants, nor ratified nor confirmed by them.

During the course of the controversy, plaintiff's members and representatives engaged in picketing outside the camp. On some occasions during the week of July 8, there was some early morning picketing. On July 17, a large number of pickets arrived at the camp in the early morning (sometime between 3:30 A.M. and 4:30 A.M.) and stationed themselves outside the camp at a fence which separated the camp from the adjacent property. The pickets engaged in shouting and cursing in loud voices am-plified in volume by a bull horn, directed at the occupants of the camp.

This was prior to the rising time of the camp occupants and resulted in disturbing the occupants of the camp as well as residents outside of the camp, living in the general area.

As a result of this conduct, complaints were made by residents of the area outside of the camp to the police and a summons was issued to one of the picketers for creating a disturbance.

In the early hours of the next morning (July 18), the picketers again engaged in similar conduct and again disturbed the peace and quiet of the camp and adjacent neighborhood. Police officers including Barela and Brewer requested the pickets to cease their disturbance and to disburse. The picketers refused to discontinue their conduct and responded with curses and threats of bodily harm against the police officers. The police officers then told the pickets that if they did not disburse, the officers would use tear gas. Again the pickets refused to disburse and continued their threats of bodily harm to the police. Thereupon the officers used tear gas and disbursed the pickets.

■ The evidence does not justify injunctive relief against the defendants, Barela or Brewer.

We turn now to a discussion of the respective rights of the plaintiff, the defendant, Finerman, and the occupants of the camp. Although the migrant workers who occupied the camp have not been made parties to this proceeding and are not here represented, this controversy involves their constitutional rights as well as those of Finerman as the employer and owner of the camp and those of the plaintiff union and its members.

■ Finerman's constitutional rights as the owner of the land includes its right to exercise dominion over and control of the property for the purpose of maintaining and operating the labor camp, but such right does not permit Finerman to exclude from the camp in-

vitees of the occupants and their right to access to information and visitors.

■ The members of the plaintiff union have a First Amendment right to express their views to the migrants with regard to the labor dispute and to solicit their support, but that right cannot be exercised in such a manner as to invade the migrants' constitutional right of privacy and to be free from coercive or other unlawful conduct on the part of the plaintiff and its members. Nor may such right be exercised in such a manner as to deny to Finerman its right to use the property for the maintenance and operation of a labor camp.

The Court's quest in this case is for a fair adjustment of the competing rights of the parties in the light of the realities of the factual situation. To this end, the Court has the authority to impose reasonable regulations and conditions on the exercise by the parties of their respective constitutional rights.

■ This fair adjustment can be accomplished in this case by recognizing the right of the plaintiff, through its members and representatives to exercise their right to free speech in an attempt to induce Finerman's employees to become members of the plaintiff's union and join with plaintiff in the strike, subject however, to regulations and conditions which will:

1. Preserve and protect Finerman's constitutional right to maintain and operate a labor camp upon the premises; and,

2. Preserve and protect the migrants' constitutional rights to privacy and to be free from coercion or other unlawful conduct on the part of the plaintiff or Finerman.

It is therefore ordered that the plaintiff union shall have access to Finerman's labor camp in Center, Colorado, to attempt by free speech, and not otherwise, to induce the occupants to become members of the plaintiff union and to join with the members of the plaintiff in the strike against Finerman, (hereinafter referred to as organizing efforts)

subject, however, to the following regulations, conditions and restrictions:

1. The plaintiff shall designate in writing, those of its members (not to exceed 20 in number) who are to have access to the camp to speak for the plaintiff and its membership. A copy of the designation shall be filed with the Court forthwith and a copy shall be delivered forthwith to the defendant, Finerman.

2. Of the designated representatives, no more than 10 shall be permitted in the camp at any one time.

3. The designated representatives shall not enter or remain in the camp while the migrants are at work and in any event, they shall not enter or remain in the camp between the hours of 8:30 P.M. and 7:00 A.M.

4. Ordinarily, the Court would permit the designated representatives to have access to the facilities (bunkhouse, dining hall and bath and toilet facilities) upon invitation by any occupant. Because of the nature of the facilities which the Court has heretofore described, it is not feasible for plaintiff's designated representatives to carry on their organizing efforts within the facilities without invading the privacy of those migrants who have not invited the designated representative into the facilities. Therefore, the realities of the factual situation require that the designated representatives shall not enter any of the facilities to carry on their organizing efforts.

5. The designated representatives in their organizing efforts, shall not disturb the peace and quiet of the camp, engage in coercive conduct, use abusive, obscene, or threatening language or engage in any other unlawful conduct.

It is further ordered that the defendant, Finerman, its officers, stockholders, agents, representatives, employees, and all persons acting by, through, or under them, are hereby enjoined and restrained from interfering with the organizing efforts of the designated representatives above prescribed and shall permit the designated representatives access to the camp in the numbers, at

the times and for the purposes previously prescribed.

It is further ordered that the plaintiff, its officers, agents, representatives, members, employees, and all persons acting by, through, or under them, shall not engage in any conduct which will deny to the defendant, Finerman, its right to maintain and operate the labor camp here involved.

It is further ordered that the plaintiff and the defendant, Finerman, and their officers, stockholders, members, agents, employees, representatives, and all persons acting by, through, or under them, shall not invade or interfere with the constitutional right of the occupants of the camp, including but not limited to their right to privacy, personal security, freedom to join plaintiff's union, and freedom to join the plaintiff's strike against the defendants if they so elect, or freedom to refrain from so doing.

Upon stipulation of the parties this day entered in open court, this Opinion and Order shall constitute a final determination of this action upon its merits and the orders herein shall constitute a final judgment.

It is further ordered that each party shall pay its own costs.