[Civ. No. 67373. Second Dist., Div. Four. Dec. 18, 1984.]

SAM ANDREWS' SONS, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

924

COUNSEL

George E. Preonas and Seyfarth, Shaw, Fainweather & Geraldson for Petitioner.

Manuel E. Medeiros, Daniel G. Stone, Ismael A. Castro and Richard Michael Fischl for Respondent.

Dianna Lyons, Daniel A. Garcia and Wendy Sones for Real Party in Interest.

OPINION

**KINGSLEY, Acting P. J.**—This case arises pursuant to a writ of review filed by Sam Andrews' Sons, (Andrews or Company) seeking review of a final decision and order of the Agricultural Labor Relations Board (Board or ALRB) (1982) 8 ALRB No. 87. The petition was filed pursuant to section 1160.8 of the Agricultural Labor Relations Act (ALRA or Act).

Real Party in Interest, United Farm Workers of America, AFL-CIO (Union or UFW) filed an unfair labor practice charge. The Union alleged in part that Andrews violated section 1153, subdivision (a) of the Act by denying union representatives access to employees residing at the Company's Lakeview labor camp. The Board found that Andrews violated the ALRA when it denied the United Farm Workers of America Union access

to employees of the labor camp, thereby violating Labor Code section 1153, subdivision (a).[1]

The Board ordered Andrews to desist from preventing, limiting, or restraining union representatives from entering the labor camp.[2] The Board ordered that petitioner sign, post and mail to its employees copies of a notice to inform them that denial of access was an unfair labor practice. The Board also ordered that the notice be read and distributed by an ALRB agent or by an Andrews' representative on company time, to all of petitioner's agricultural employees. The reading of the notice was to be followed by a question and answer period on company time. Petitioner was also directed to compensate employees for time lost during this question and answer period.

The Union representatives were to be permitted to enter camp to announce the time and place of Union meetings, and to erect and maintain bulletin boards on the camp facility. The company was to permit the Union access to them in order to post notices relating to Union business, and to issue appropriate notices. The Board's order omits the administrative law judge's requirement that Andrews erect a bulletin board.

The Board noted that this was the third time the Board found it necessary to order Andrews to cease interfering with Union organizers seeking access to its labor camp. The order requires Andrews to cease and desist from "preventing, limiting, or restraining any union organizer or agents from entering and remaining on the premises of [the company's] labor camp for the purpose of contacting, visiting or talking to any agricultural employee on the premises."

## FACTS

Andrews, an agricultural employer, has a labor camp surrounded by a chainlink fence. The compound contains two barracks that are in a sepa-

---

[1]Section 1153 of the Act states: "It shall be an unfair labor practice for an agricultural employer to do any of the following: (a) To interfere with, restrain, or coerce agricultural employees in the exercise of the rights guaranteed in section 1152." Section 1152 provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of continued employment as authorized in subdivision (c) of Section 1153."

[2]The administrative law officer had ordered that two Union organizers be permitted to enter the dining hall and barracks, but the Board ordered that the Union be permitted unrestricted entry into the camp.

rately fenced area. The barracks house employees during the summer melon harvest and during the fall and spring lettuce harvests. The entrance to the compound is a gate separating the compound from the parking area. There is also an equipment storage area surrounded by barbed wire, and a separately fenced kitchen-dining facility.

Each barrack contains 60 double bunks arranged in rows and divided into cubicles by open plywood dividers. Each cubicle has four beds in it. The aisle side of the cubicle is open. Each barrack has a shower and toilet, and a "lounge area," containing tables, benches and trash cans. The residents use the lounge area to play cards, watch T.V., and use a pay phone.

Breakfast is served from 5:30 a.m. to 6 a.m. A company lunch wagon makes its rounds to various crews on a staggered basis. Evening meal is served in the dining facility from 6 p.m. to 6:30 p.m. The workers go to the barracks, or the company park, and some go to town, although most do not have transportation to get to town. The park area is primarily used by the company employees (not harvest employees) who live in the trailers, and the park is only rarely used by harvest employees. However, other employees may use the park.

In 1979 the Union became the collective bargaining representatives of Andrews' employees. The company did not enforce its rule prohibiting nonemployees from visiting the barracks compound. Andrews denied Union representatives access to the workers in the fields after the Union mounted a strike, and the company began to strictly enforce a rule barring visitors from entering the compound. In 1981 the guards were told to find out to whom visitors wished to speak, to take the named worker to the visitor (assuming the worker wanted to see the visitor) and to let them meet outside the camp. When the gates were locked, the workers depended on the co-operation of the guards to leave camp.

Villarino, a Union representative, testified that more than once when he arrived at camp, the gates were locked and no guard was around. A guard-house was built in October 1981.

Early in 1981 camp residents used to talk to UFW representatives through the chain link fence. After the strike began, the company put up many yards of thick black tarp over the fence, making it impossible for workers and Union people to talk at the fence. Villarino and other representatives were denied access to the camp.[3]

---

[3]The UFW and ALRB do not state that the Union attempted to communicate with the employees in ways other than by (1) talking at the fence, and (2) seeking access to the compound. There is no showing that the Union made other attempts at communication.

During a strike of tractor drivers and irrigation workers, some of the picketers engaged in loud protest activities, honking horns, and other loud disruptive behavior. After the Union got a temporary restraining order permitting access to the workers in the field, the disruptive incidents by picketers discontinued.

Villarino believed meeting with workers at the Union hall and during lunch breaks would be inadequate because the lunch breaks were too short and were monitored by company officials, and few employees had transportation to get to the Union hall 30 miles away.

The case at bench raises the issue of the legality of the Agricultural Labor Relations Board's order which granted to the Union an unrestricted right of access to a company-owned labor camp.

We note that, in accord with section 1160 of the California Labor Code, a finding of the ALRB with respect to questions of fact will be sustained by the reviewing court if supported by substantial evidence on the record as a whole. And it recently has been held that findings of the ALRB with respect to questions of fact shall be conclusive if supported by evidence in the record as a whole. (*Frudden Enterprises, Inc.* v. *Agricultural Labor Relations Bd.* (1984) 153 Cal.App.3d 262 [201 Cal.Rptr. 371].)

However, the United States Supreme Court has also said that in reviewing the agency's findings, the findings must ". . . be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of testimony of witnesses or its informed judgment on matters within its special competence or both." (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 490 [95 L.Ed. 456, 468-469, 71 S.Ct. 456].)

We also note that Labor Code section 1148 directs the ALRB to follow applicable precedents of the NLRA as amended, and California decisions have confirmed the importance of pertinent federal precedents in construing the act. (*Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60 [160 Cal.Rptr. 745, 603 P.2d 1341].) Therefore, we shall follow applicable NLRB precedents.

### The Issues

Petitioners in their opening brief claim that any right of access to petitioner's property by the Union was not a First Amendment right, but is at most a statutory right described in the *Babcock and Wilcox* case. ([*Labor*

*Board* v. *Babcock & Wilcox Co.* (1956)] 351 U.S. 105 [100 L.Ed 975, 76 S.Ct. 679].) Petitioner relies on language in *Hudgens* v. *NLRB* (1976) 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029], which reads as follows: "In the present posture of the case the most basic question is whether the respective rights and liabilities of the parties are to be decided under the criteria of the National Labor Relations Act alone, under a First Amendment standard, or under some combination of the two. It is to that question, accordingly, that we now turn." (*Id.*, 424 U.S. at p. 512, [47 L.Ed.2d at p. 202, 96 S.Ct. at p. 1033].)

"[T]he rights and liabilities of the parties in this case are dependent exclusively upon the National Labor Relations Act. Under the Act the task of the Board, subject to review by the courts, is to resolve conflicts between § 7 rights and private property rights, 'and to seek a proper accommodation between the two.' [Citation.] What is 'a proper accommodation' in any situation may largely depend upon the content and the context of the § 7 rights being asserted. The task of the Board and the reviewing courts under the Act, therefore, stands in conspicuous contrast to the duty of a court in applying the standards of the First Amendment, which requires 'above all else' that expression must not be restricted by government 'because of its message, its ideas, its subject matter, or its content.'" (*Id.*, 424 U.S. at p. 521 [47 L.Ed.2d at pp. 207-208, 96 S.Ct. at p. 1037].)

Petitioner argues that, since the Board is obligated by section 1148 of the act to follow applicable precedents of the NLRB, the Board's decision as to rights of access must be reviewed under the standard set by the Supreme Court's decision in *Labor Board* v. *Babcock & Wilcox Co., supra,* 351 U.S. 105, describing a statutory right of access, and not a right of access under the First Amendment. ▮▮ ▮▮ ▮▮ Petitioner points out that our Supreme Court has also applied the *Babcock & Wilcox*[4] standard in determining the propriety of an access regulation, arguing that our Supreme Court

---

[4]The court in *Babcock & Wilcox* has applied a rule that asks the court to determine whether the union had other alternative means of communication. The *Babcock* case said: "Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize." (351 U.S. at p. 112 [100 L.Ed. at p. 982].) "It is our judgment . . . that an employer may validly post his property against nonemployee distribution of union literature if *reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message*

has also rejected the notion that there is a First Amendment right of access. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687].)

The United Farm Workers and the ALRB argue that the Union did have a First Amendment constitutional right of access emanating from the United States and state Constitutions as well as having rights of access emanating from the Agricultural Labor Relations Act, and that those First Amendment rights and statutory rights were violated by petitioner, Sam Andrews' Sons.

The questions before us are (1) whether there is a First Amendment right of access to a farm labor camp; (2) whether, even if generally there is a First Amendment right to access in certain agricultural labor camp cases, certain conditions are met here that would bring any constitutional rights into play in this particular case, i.e., whether there is state action here and whether state action is essential for First Amendment rights; (3) whether, even if there is *no* First Amendment right to access by the Union, the conditions in the case at bench are such that the Farm Workers' Union nevertheless had a statutory right to access here under the *Babcock & Wilcox* rule; (4) whether, if there is a First Amendment right to access here, the company policy of calling out named individuals to the park was a violation of the Union's First Amendment rights of access, such that the Board could properly order the company to grant the Union further access; (5) whether if union's rights of access was under the First Amendment, the Board's order granting unrestricted rights of access was nevertheless improper even under the First Amendment; and (6) whether the Union's rights of access were violated under the rule of *Babcock & Wilcox,* in that the Union had no reasonable alternatives for communicating with the employees.

There are also questions as to whether the Board's order concerning the reading of notice on company time was punitive and improper, and whether the Board's order in granting unlimited access was overbroad.

I

Our first question is whether there is a right of access under the rule of *Babcock & Wilcox.* Our Supreme Court has held in *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392 that labor organizers are permitted qualified access to agricultural property under the provisions of the ALRA, as set forth in Labor Code section 1140 et seq. The California Supreme Court reasoned therein that when the Legislature

and if the employer's notice or order does not discriminate against the union by allowing other distribution. *In these circumstances the employer may not be compelled to allow distribution even under such reasonable regulations as the orders in these cases permit.*" (Italics added; 351 U.S. at p. 112, [100 L.Ed. at pp. 982-983, 76 S.Ct. at p. 684].)

granted rule-making powers to the Board in California Labor Code section 1144, and when the Legislature directed the Board to follow applicable precedents of the NLRA, under California Labor Code section 1148, the state Legislature intended the ALRB to structure a qualified right of entry onto agricultural property for purposes of organizing a labor union.

In *Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392, the court applied the rule of *Labor Board* v. *Babcock & Wilcox Co. supra,* 351 U.S. 105 and reasoned that access to company property by non-employee labor organizers can be denied if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message. The California court stated that, " ' . . . when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from [the employer's private] property has been required to yield to the extent needed to permit communication of information on the right to organize.' " (*Agricultural Labor Relations Bd.,* at p. 406.) The California court relied on the ruling of *Babcock & Wilcox, supra,* 351 U.S. 105, which required the court to strike a balance between the employer's property rights and the union's right to organize the employees.

However, we note that in the case at bench the Board granted an unlimited right of access. Therefore, the task before us shall be first to strike a balance with the employer's property rights and the Union's rights to organize to determine whether the Board's finding of access can be sustained under the rule of *Babcock & Wilcox.*

Secondly, we will examine applicable precedents to see if the cases also sustain unlimited and unqualified access as granted by the Board.

The rule of *Babcock & Wilcox* has been applied in a variety of federal cases, and different results have been reached depending on whether alternate means of communication were available. The *Babcock & Wilcox* rule has been held to permit access to a lumber camp bunkhouse, where it was impractical to contact the employees anywhere else after the evening meal. (*National Labor Rel. Bd.* v. *Lake Superior Lumber Corp.* (6th Cir. 1948) 167 F.2d 147, 152.) In *Grossinger* case [*NLRB* v. *S & H Grossinger's Inc.* (2d Cir. 1967) 372 F.2d 26] the *Babcock & Wilcox* rule was used to permit union access to a large rural resort hotel's residential employees. In *Grossinger,* the union attempted to communicate with employees, but there were

no effective alternatives for reaching the employees who lived on the employer's premises and the management was hostile to the union's efforts at communication.

Other federal cases have held that there is no right of access, because alternative means of communicating with employees would have been effective, and because the union made no reasonable effort to communicate with the employees by alternative means. The Board's access order was not upheld by the federal court in *NLRB* v. *Kutsher's Hotel & Country Club, Inc.* (2d Cir. 1970) 427 F.2d 200, because the court found alternate means were available since the resort hotel's employees would have been readily accessible by union organizers while the employees were crossing a public road.

And in the case of *NLRB* v. *Tamiment, Inc.* (3d Cir. 1971) 451 F.2d 794, the court held that there was no right of access because the union also made insufficient attempts to communicate by alternate means. This was shown by the union's lack of effort in getting a list of employees' names from the employer; there was an absence of a showing that the union attempted to arrange a meeting, and there was no showing of an attempt to post notices on company facilities. In *Tamiment,* the court applied the *Babcock & Wilcox* rule and found that the union should be denied access to the employer's self-contained resort.

Thus, the cases that have applied the *Babcock & Wilcox* test have looked to see the availability of *reasonable, practical and effective* alternate methods of communication with the employees, and whether the union made reasonable efforts to utilize those alternatives.

Having decided that there is a statutory right of access under sections 1144 and 1148 of the Labor Code and that under section 1148 the rule of *Babcock & Wilcox* applies, we shall proceed to determine whether the Board's order was proper under the standards of *Babcock & Wilcox.* That is, we shall decide whether the Union herein had other reasonable alternatives for communicating with the workers beside access to the employer's property, and whether they explored those alternatives. Additionally, we consider also whether the type of access actually permitted by Sam Andrews' Sons was such a reasonable alternative.

 In the case at bench the Union made only limited effort to communicate with the workers in alternate ways. Like the union in *Tamiment, supra,* 451 F.2d 794, where the federal court held against the union, here there is no showing that the UFW requested a list of employees' names, no

showing of a request to post a notice, and no showing that the Union called a meeting. Nevertheless, we think the Union in this case was entitled to access, because the Union has shown that there were no other "reasonable methods of communication with the agricultural employees," other than actual access to the premises.

Whereas letter writing may be a reasonable first step in reaching the hotel workers in the case in *Tamiment,* it could well be an exercise in futility in communicating with agricultural farm laborers, many of whom are illiterate. Secondly, calling a meeting and requesting to post a notice on Sam Andrews' company property would probably have been useless, ineffective and impractical. There is evidence that when the Union organizers attempted to talk to employees while they were standing at the camp fence, the company put up heavy black tarping all around the fence making it impossible to speak to employees through the fence. Third, the employer, Sam Andrews' company here, has disobeyed three other ALRB orders concerning Union access, showing that employer was persistently hostile to Union attempts to organize the employees.

In the *S & H Grossinger's* case, *supra,* 372 F.2d 26, the union's considerable efforts at organizing was met with outright management hostility, and the right of access by the union was upheld. While the efforts by the union in *Grossinger's* to use alternate means of communication was far greater than the Union's efforts here to use alternate means of communication, in the case at bench the management's hostility to the Union was continuous and ongoing. Therefore, in the case at bench the Union was not required to seek out other means of communicating with the workers. The Andrews' company had shown by its longstanding course of conduct that those further efforts probably would have been futile and been an idle act.

In view of the company management's failure to respond to three other Board orders, and in view of the management's covering up the premises with tarp to prevent communication through the fence, the union herein has sustained its burden of showing there were no other reasonable, practical and effective alternative methods of communication.

It is true that a meeting on the adjacent company park, as the company suggests, might well have been a possible alternative to entry into the camp (a matter we need not here decide). In this particular case where the company had exhibited a continuous unwillingness to deal with the Union, the Union need not attempt to pursue that alternative. ■ The Union is only required to seek out reasonable, effective and practical alternatives under the particular circumstances. It is not required to keep on seeking alterna-

tives no matter how impractical the alternatives may be. Therefore, when alternate means of communication are theoretically available, but a continuous, relentless hostility and lack of cooperation on the part of management in essence renders those alternatives unreasonable and impractical, the Union in effect has no realistic alternatives other than actual access to the premises.

 Further, the method of communicating with employees actually permitted by the company was not a reasonable alternative. The procedure of relying on the company guard to go and get each individually named employee and to accompany the employee to the park or lot outside the camp so that the employee can meet individually with the UFW representative in the company lot is not an effective alternative. A single company guard, or two guards, walking back and forth, over and over, between the guard house and the barracks, calling out each employee by name, and then walking each individual employee to the parking lot or park area, one by one, ad nauseum, for purposes of a Union meeting, would be time consuming and would very likely act as a deterrent to a mass or group meeting. While personal contact with the workers on an adjacent area may be a reasonable alternative in certain contexts (see discussion in 16 Cal.3d 392, and fn. 12), it is not adequate here.

Therefore, if we were to apply the rule of *Babcock & Wilcox* (as our court did in *Agricultural Labor Relations Bd.* v. *Superior Court*), rather than a First Amendment right of access, we find that the UFW Union herein had no *reasonable* alternative means of communication other than access to the barracks, in view of the company's continuous course of hostile conduct toward the Union, and we find a statutory right of access to the premises.

Language in *NLRB* v. *Lake Superior Lumber Corp., supra,* 167 F.2d 147, is applicable here. The court said (at p. 152): "In view of the limited free time available to the employees and the practical difficulties involved in contacting [the employees] after the evening meal in any place other than the bunkhouses, Union organization would as a practical matter be seriously handicapped by restricting such activities to the recreation hall. . . ." In our case Union organization would be seriously handicapped by restricting communication to the system permitted by the Andrews' company.

## II

 Our next question is whether the Board's order, granting right of access to the Union without also imposing restrictions, was overbroad.

We agree with the company that the granting of unlimited access to the employer's property, without any limitations as to time or as to the reasonable nature of access, is improper.

■ Generally speaking, the union's right to access for the purpose of union activities on the employer's property is subject to reasonable regulations, and the rules as to what type of access is reasonable is a question for the Board, and will not be interfered with if supported by the record. (*NLRB v. Lake Superior Lumber Corp., supra,* 167 F.2d 147.) ■ However, cases do refer to a "qualified" right of access. (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392.) Here there were no regulations at all regarding access, nor was the right of access "qualified" in any way.

Furthermore, even those cases which found a First Amendment right of access, have held that the employer can establish reasonable rules regulating access. (*Petersen* v. *Talisman Sugar Corp.* (5th Cir. 1973) 478 F.2d 73, 81-82.) The courts have held the union cannot exercise its First Amendment rights in such a way that the migrant worker's privacy is invaded, or in a way that the owner is denied its right to use its property. (*United Farm Workers Union* v. *Mel Finerman Co.* (D.Colo. 1973) 364 F.Supp. 326.) ■ The decision of the Board to create a *limited* right of access by use of a *detailed* and *specific* regulation does not conflict with any intent of the Legislature inferable from its enactment of sections 1148 and 1152. (*Agricultural Labor Relations Bd.* v. *Superior Court, supra,* 16 Cal.3d 392.) ■ As the court said in *Velez* v. *Amenta* (D.Conn. 1974) 370 F.Supp. 1250, 1254, persons do not have an unfettered right of access to the camp day or night, and the Board's order, which did not restrict access to times was not reasonable.

Although rules as to what type of access is reasonable is generally a question of fact for the Board, in the case at bench the total absence of regulations, either as to time, or to place, or to number of persons permitted to enter the camp, was unreasonable. We hold the unlimited access was improper.

### III

■ Company suggests that the reading of the notice on company time is punitive and improper. We do not agree. The reading of a notice, the posting of notice, and educational requirements are appropriate remedial measures for unfair labor practices, and has been held proper and not punitive in *Jasmine Vineyards, Inc.* v. *Agricultural Labor Relations Bd.* (1980) 113

Cal.App.3d 968 [170 Cal.Rptr. 510]. The *Jasmine* court reasoned that the reading of a remedial notice to current employees followed by a question and answer period on company time was necessary because agricultural employees are often illiterate and communicating with employees on non-work time was difficult. *Jasmine* held that the Board has broad discretion in fashioning remedies which will effectuate the purposes of the act and the burden of the remedy being placed on the wrongdoing party is proper.

In the case at bench the company has been a clear wrongdoer and the Board had discretion to fashion a remedy which included the reading of a notice on company time, followed by a question and answer period.

## IV

The company raises the question of workers' right to privacy in the camp, claiming that even a qualified access right invades the workers' right to privacy. The owner or operator of a labor camp cannot exercise the employees' rights for them if the employee does not wish to speak to a union representative. (*Vista Verde Farms* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 307, 317 [172 Cal.Rptr. 720, 625 P.2d 263].)

## V

Our next question is whether there is also a First Amendment right of access. In view of our finding that the rights of access were violated under the ALRA, we need not reach this constitutional question. And even if we were to find a First Amendment right of access, under either the federal or California Constitution, those rights are not absolute. In First Amendment cases the courts still balance the availability of alternate means of communication and the use to which the property is put by the owner, and the owner may establish reasonable rules of access to prevent unnecessary interference with its business activity. (*Petersen* v. *Talisman Sugar Corp.*, *supra*, 478 F.2d 73.)

Thus, the Board regulation granting unrestricted and unbridled access was improper, whether we apply the *Babcock & Wilcox* statutory rule, as we have done, or whether we were to find a free speech right of access—an issue which, in this case, we expressly declined to decide.

The order under review is vacated insofar as it permits access to the camp without limitation as to time or number of organizers involved; it is otherwise affirmed. The case is remanded to the Board with directions to reframe

its order so as to require reasonable access to the camp, with specific detail as to time and number of organizers.

McClosky, J., and Arguelles, J., concurred.

A petition for a rehearing was denied January 4, 1985, and the petitions of respondent and real party in interest for a hearing by the Supreme Court were denied February 21, 1985. Bird, C. J., did not participate therein.